## 30103. PAGE v. PAGE.

HALL, Justice.

This appeal presents a question concerning the extent of the right to consult with counsel in deciding whether to invoke the privilege against self-incrimination in giving testimony in a lawsuit.

Robin B. Page appeals an order of the Fulton Superior Court holding him in contempt for failure to make court-ordered alimony and child support payments. He raises as his sole claim that "The trial court denied appellant the benefit of effective counsel as guaranteed under the Sixth and Fourteenth Amendments of the Constitution of the United States when the court refused to permit appellant, while testifying in his own behalf . . . assistance from his attorney."

The issue arose in the trial court when appellant sought to testify and several questions were addressed to him by the court in an attempt to "understand your problem" in repeatedly failing to make the ordered payments. His attorney stated that "Your Honor, I'm going to state in my place now, he has a myriad of

problems with Internal Revenue and he will have to take the Fifth Amendment on almost every matter, and I will request to the Court that I can advise him at what point he must." The court refused to allow his attorney to advise him on a question-by-question basis whether he should plead the Fifth Amendment privilege against self-incrimination as a ground for refusal to answer the question. There is no doubt that, prior to giving any answers, appellant was thoroughly informed of his right to exercise his own judgment to refuse to answer any specific question on Fifth Amendment grounds, and he was also informed of the manner of invoking the right.

We note that there is no allegation on appeal that anything appellant said was actually incriminating. Even were it incriminating it does not necessarily follow that the contempt ruling here in issue should be reversed: appellant's feared incrimination problems with the Internal Revenue Service are wholly extraneous to this proceeding in which there was ample evidence justifying the contempt for failure to make payments apart from any testimony of appellant. Under these circumstances, it might well be that any error of the trial court on this point would be harmless error, as was ruled on analogous facts in Gowen v. Wilkerson, 364 FSupp. 1043 (W. D. Va. 1973). See Rhodes v. Houston, 418 F2d 1309, 1311 (8th Cir. 1969). However, because of the importance of the central question here, we will decide it directly.

The protections of the Fifth Amendment may be invoked in civil as well as criminal actions, Lefkowitz v. Turley, 414 U. S. 70, 77; Arndstein v. McCarthy, 254 U. S. 71, and apply fully to state proceedings through the Fourteenth Amendment. Malloy v. Hogan, 378 U. S. 1. A criminal defendant may not be compelled to take the stand at all, thus in effect being allowed to invoke the Fifth Amendment against any and all questions. Other persons however, cannot stymie questioning totally, but must take the stand when called and decide after each question whether to invoke the privilege or not. One situated analogously to a criminal defendant, for example, one likely to be indicted by an investigating grand jury, is entitled to a clear warning to the effect that he has and may invoke the privilege. E.g., United States

v. Rangel, 496 F2d 1059 (5th Cir. 1974). See generally, Annot., 79 ALR2d 643 (1961). One who is not a defendant or a prospective defendant, but a mere witness, may not even be entitled to receive a warning. United States v. Luxenberg, 374 F2d 241 (6th Cir. 1967). See generally, McCormick on Evidence, § 135 et seq. (2d Ed. HB 1972); 8 Wigmore on Evidence, § 2268 et seq. (McNaughton Rev. 1961).

The narrow question before us is whether, in order to make an intelligent decision whether to invoke the protection of the Fifth Amendment, a defendant in a civil action is entitled to the advice of his attorney on a question-by-question basis while testifying, or whether, once having been advised of the scope of the privilege and the manner of its invocation, he must decide for himself when to invoke it.

Regardless of whether the right sought to be asserted is regarded as an incident of the right to counsel or as a procedural element necessary for intelligent invocation of the Fifth Amendment, we find no authority in support of appellant's claim. The question appears not to have been directly litigated. Our conclusion is based upon the plain implication of the numerous decisions ruling that a defendant's rights were amply protected by one clear warning that he could invoke the privilege to avoid incriminating himself in responding to subsequent questions. The rationale of that rule is that only the defendant knows what his answers to questions would be, and he must decide when to invoke the privilege. Any burden in placing him on his own in this fashion is at least in part relieved by the fact that should he assert the privilege, he is not required to state how he might be incriminated[1] and as a practical matter his claim of possible incrimination is rarely challenged.

---

[1]"However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the

Despite appellant's argument here that his counsel should have been allowed to "signal" him which questions to refuse, we find that were he entitled to the right to counsel that he asserts, such signaling would not suffice as the advice of counsel. Because the attorney cannot be in possession of all the facts known personally by his client, what would be required for a full, counseled, invocation of the Fifth Amendment would be a totally private consultation between the witness and his attorney following any question as to which either the witness or his attorney could foresee any self-incrimination problem under the "link in the chain" test. Such a right, whether it be deemed procedural or substantive, desirable[2] or undesirable, does not exist under the present state of federal law. As a state court, we do not have the power to expand the federal constitutional right against self-incrimination beyond the limits given it by federal authorities. United States v. Interborough Delicatessen Dealers Assn., 235 FSupp. 230, 232 (S. D. N. Y. 1964). Therefore, appellant's claim here must fail because he has not shown the existence of the right which he seeks to assert. See United States v. Luxenberg, 374 F2d 241, supra, p. 246; State v. Ceaser, 249 La. 435 (187 S2d 432). See generally, M. Kaminsky, Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil

---

implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' " Hoffman v. United States, 341 U. S. 479, 486.

[2]"Requiring that the witness make a question-by-question judgment on the legal necessity of responding creates a danger that the privilege will not be invoked because of confusion or exhaustion rather than the knowing and intentional decision not to invoke it required for a waiver of a constitutional right." McCormick on Evidence, § 136 (2d Ed. HB 1972).

Litigation, 39 Brooklyn L. Rev. 121 (1973). But cf., United States v. Leighton, 265 FSupp. 27, 38 (S. D. N. Y. 1967) (witness likely to be indicted by grand jury allowed to consult with attorney outside grand jury room on question-by-question basis).

Appellant relies heavily on the claimed favorable implications of the recent Supreme Court decision in Maness v. Meyers, — U. S. — (95 SC 584, 42 LE2d 574) (1975). However, the court's own description of its inquiry there suffices to show its inapplicability to the present question: "We granted certiorari to decide whether in a state civil proceeding a *lawyer* may be cited for contempt for advising his client, a party to the litigation, that the client may refuse on Fifth Amendment grounds *to produce subpoenaed material.*" 42 LE2d 578. (Emphasis supplied.) The court answered that question no. However, that ruling vindicating the attorney's right to advise his client prior to their court appearance to refuse on Fifth Amendment grounds to comply with a subpoena to produce materials is vastly different from the right of the attorney claimed here to advise his client on a question-by-question basis what may be answered and what should not be. In the case of subpoenaed materials, the contents may be studied in advance of the court appearance by the attorney; but he cannot know the content of his client's answers to questions before they are asked. Thus, in practical operation, the Maness decision poses no threat to bog down a civil inquiry in interminable private consultations between an attorney and his client on the stand; but the right sought to be claimed here by appellant Page would have just that effect.

Moreover, the Supreme Court in Maness emphasized that there was no doubt under applicable law that the attorney plainly had the right to consult with his client "at the times and in the manner he did" (42 LE2d 587, n. 14), and that he was penalized by the trial court merely for the advice he gave in good faith during those consultations. The case before us is different: here it is sought to establish a *new* right to consult with one's attorney while on the stand — that is, at a time and in a manner not heretofore recognized. Maness offers no support for this proposition, and appellant's claim fails.

Turning to the merits of the contempt action here, appellant introduced no evidence refuting his former wife's evidence of non-payment, and therefore no basis for reversal appears even though the Fifth Amendment is claimed as the basis for his refusal to answer. Gowen v. Wilkerson, 364 FSupp. 1043 (W. D. Va. 1973). His testimony, concerning which the Fifth Amendment question arose, was designed to be exculpatory, or to raise a defense to nonpayment. Though he was entitled to plead the Fifth Amendment in refusing to answer, and he did so plead in response to most questions by the court, the price is that he makes out no defense. Appellee's evidence of nonpayment went unrefuted and unexcused, and the judgment of contempt must be affirmed.

Appellee's motion for damages under Code Ann. § 6-1801 asserting that appellant brought the case up for delay only, is denied because this court is not fully satisfied that the appeal was for delay only. *Lipton v. Lipton,* 211 Ga. 442, 446 (86 SE2d 299).

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 10, 1975 — DECIDED SEPTEMBER 12, 1975.

*Stanley H. Nylen,* for appellant.
*Bell & Desiderio, Ruby C. Bell,* for appellee.