A01A0652. BEGNER v. STATE ETHICS COMMISSION.

(552 SE2d 431)

JOHNSON, Presiding Judge.

An attorney delivered to a political candidate a contribution on behalf of a client without disclosing the client's name, in violation of

---

OCGA § 21-5-30 (e), which prohibits anonymous campaign contributions. When the superior court ordered the attorney to testify before the State Ethics Commission and to reveal the identity of the client who made the contribution, he appeared before the Commission but refused to reveal the name of the client, invoking his statutory and constitutional privileges against self-incrimination. The issue presented by this case is whether a person can properly be held in contempt for violating court orders requiring him to appear and testify, when he does, in fact, appear and testify, but then refuses to divulge information that he believes may incriminate him. We find that under certain circumstances, he cannot be held in contempt. Because the trial court in this case did not have the opportunity to determine whether those circumstances exist here, we vacate the trial court's judgment and remand the case for further proceedings and findings on this issue.

Tamera Knight was a candidate for the Georgia House of Representatives. She received a campaign contribution in the form of a $100 check drawn on the escrow account of the appellant, Alan Begner. Knight's opponent, Vinson Wall, criticized her for accepting the contribution from Begner. Knight then confronted Begner, who explained to her that the check was not his personal contribution to her campaign but was actually a contribution from one of his clients. However, Begner refused to identify his client for Knight. Knight returned the $100 contribution to Begner on July 15, 1994. Believing that Wall was involved in making the anonymous contribution as part of a conspiracy to malign her campaign, Knight filed a complaint against Wall with the State Ethics Commission. The Commission held a hearing on the complaint on September 22, 1994, and subpoenaed Begner to testify. During his testimony, Begner admitted that he had made the $100 contribution and testified that Wall was not involved, but refused to identify the client who had made the contribution, invoking the attorney-client privilege.

The Commission dismissed the complaint against Wall but found probable cause to believe that Begner himself had violated OCGA § 21-5-30 (e), which prohibits the making of anonymous campaign contributions, and set the case for an evidentiary hearing to be held on December 14, 1995. The Commission subpoenaed Begner to appear at the hearing and then filed a petition to enforce an administrative subpoena on August 14, 1995, in the Superior Court of Fulton County. The petition sought a court order requiring Begner to appear before the Commission and, specifically, to identify the client who provided money to Begner for the purpose of making a campaign contribution. On August 15, 1996, the Commission filed a motion for summary judgment on the issues presented, and the hearing was continued pending the final disposition on this motion. On October

29, 1997, the Fulton County Superior Court issued an order granting the Commission's motion for summary judgment and ordering Begner to appear before the Commission and to disclose the name of the client from whom he had received the contribution. Begner did not appeal that order of the court.

On March 26, 1998, Begner filed a motion in the Fulton County Superior Court asking it to clarify whether its order of October 29, 1997, compelled him to testify against himself. Begner's motion also sought a protective order in relation to the subpoena issued by the Commission. On February 9, 1999, the trial court issued an order dismissing the motion for protective order, as it was moot by that time, and denying the motion for clarification. It denied the motion for clarification because, it stated, the order at issue did not require clarification and, in addition, Begner was actually seeking to assert a defense rather than clarification. Begner did not appeal this second order of the trial court.

After being subpoenaed by the Commission, Begner appeared at the April 14, 1999 hearing but refused to disclose the name of the client who had given him the $100 contribution, invoking the statutory privilege in OCGA § 24-9-27, together with the constitutional privilege protecting him from self-incrimination. Following Begner's refusal to name the client at the April 14 hearing, the Commission filed a motion for contempt on July 1, 1999. The trial court heard argument on the motion on October 7, 1999, and, on January 25, 2000, initially issued its order finding Begner in contempt for failing to comply with the court's previous two orders. When Begner's initial attempt to appeal this decision resulted in a remand (because that order was deemed not to be a final order by this Court), the trial court reissued its order on October 9, 2000, as a final order finding Begner in contempt and providing that he could purge that contempt by appearing and testifying as previously ordered. On October 17, 1999, Begner filed a notice of appeal from that order.

1. In his first enumeration of error, Begner asserts that the trial court erred in finding him in contempt of its earlier order requiring that he testify before the State Ethics Commission because he did, in fact, testify before the Commission and, while testifying, properly invoked his statutory and constitutional privileges against self-incrimination. For the reasons set out below, we vacate the trial court's order and remand the case for further proceedings.

The Fifth Amendment of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself.[1] The Georgia Constitution contains a simi-

---

[1] U. S. Const., Amend. V.

lar privilege against self-incrimination, providing that no person shall be compelled to give testimony tending in any manner to be self-incriminating.[2] In addition, the privilege has been codified in OCGA § 24-9-27 (1), which states, in part: "(A) No party or witness shall be required to testify as to any matter which may criminate or tend to criminate himself or which shall tend to bring infamy, disgrace, or public contempt upon himself or any member of his family."

The privilege against self-incrimination not only extends to answers that would in themselves support a conviction, but also to answers that would provide a "link in the chain of evidence needed to prosecute."[3] The case upon which Begner primarily relies with respect to the privilege under Georgia law is *Busby v. Citizens Bank of Hapeville*,[4] in which we considered the appeal from an order holding appellants in contempt for failing to answer post-judgment interrogatories. Each of the appellants had refused to answer certain interrogatories "on the grounds that to answer the interrogatories might tend to incriminate me."[5] Following a motion to compel, the trial court had ordered the appellants to "completely . . . answer each interrogatory."[6] When the appellants reiterated their privilege objection, the trial court ruled that they were in contempt. Begner cites *Busby* for the proposition that, once the witness has ascertained that his answers could be or are incriminating, only he or she can weigh the effect; therefore, there is nothing for the trial judge to determine. However, Begner takes the Court's language out of context and misapplies it here. Although we reversed the trial court, as Begner points out, we held that, under the limited circumstances in which a witness is compelled to make financial disclosures, "questioning concerning financial affairs might tend to incriminate a person *as a matter of law*."[7] In a matter dealing particularly with financial affairs, "only the witness can weigh the effect. There is nothing for the trial judge to determine."[8] We have reaffirmed this limited holding in several cases since *Busby*.[9]

The holding of *Busby* does not apply in this case, as this case does not involve financial disclosures. The applicable standard under

---

[2] Ga. Const. of 1983, Art. I, Sec. I, Par. XVI.

[3] See *Hoffman v. United States*, 341 U. S. 479, 486 (71 SC 814, 95 LE 1118) (1951); *Simpson v. Simpson*, 233 Ga. 17, 19 (209 SE2d 611) (1974).

[4] 131 Ga. App. 738 (206 SE2d 640) (1974) (physical precedent only).

[5] (Punctuation omitted.) Id. at 739.

[6] (Punctuation omitted.) Id.

[7] (Punctuation omitted; emphasis in original.) Id. at 740.

[8] Id. at 741; see also *Mallin v. Mallin*, 227 Ga. 833, 835 (2) (183 SE2d 377) (1971).

[9] See *Prince & Paul v. Don Mitchell's WLAQ*, 127 Ga. App. 502, 503 (2) (194 SE2d 269) (1972); *Tennesco, Inc. v. Berger*, 144 Ga. App. 45, 47 (3) (240 SE2d 586) (1977); *Chambers v. McDonald*, 161 Ga. App. 380, 381 (1) (288 SE2d 641) (1982).

Georgia law is found in *Mallin v. Mallin*,[10] which holds that when questioning does not tend to incriminate a person as a matter of law, the trial court must determine if the answers *could* incriminate the witness. If so, then the decision whether it *might* must be left to the defendant.[11] If the witness then says under oath that his answer would incriminate him, then "the court can demand no other testimony of the fact."[12] Further, the United States Supreme Court recently reaffirmed its prior holding from *Hoffman v. United States*[13] that "the privilege's protection extends only to witnesses who have reasonable cause to apprehend danger from a direct answer."[14] The Court added that the inquiry is for the court; the witness' assertion alone does not establish the risk of incrimination.[15] Georgia courts have consistently applied the holding from *Hoffman* and held that, although the privilege against self-incrimination is applicable in civil cases,[16] "there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim."[17]

Here, Begner appeared at the April 14, 1999 hearing pursuant to the trial court's orders. Begner did not assert a blanket Fifth Amendment privilege, refusing to answer all questions. Rather, he considered each question as it was asked and invoked his privilege against self-incrimination when asked any question relating specifically to the anonymous contribution and, particularly, when asked to identify the name of the client who gave him the contribution.

Under the *Mallin* standard, the trial court could have properly found Begner in contempt of its orders only if it had first determined that the questions posed to Begner *could not* have been incriminating. If, however, the trial court had determined in its inquiry that the questions could have been incriminating, then Begner could have

---

[10] Supra.

[11] See id. at 834-835 (1); see also *Lawrence v. State*, 257 Ga. 423, 424, n. 3 (360 SE2d 716) (1987); *Bass v. Bass*, 222 Ga. 378, 385 (3) (149 SE2d 818) (1966).

[12] (Punctuation omitted.) *Mallin*, supra at 834.

[13] Supra.

[14] (Citation and punctuation omitted.) *Ohio v. Reiner*, 532 U. S. 17 (121 SC 1252, 1254, 149 LE2d 158) (2001).

[15] See id.

[16] Arguably, the proceeding in this case is not a civil proceeding, but the Supreme Court of Georgia applied the *Mallin* standard in *Lawrence v. State*, supra, which was a criminal case. Thus, although the cases in which this Court has articulated the standard were all civil cases, the standard from *Hoffman* and *Mallin* should be applied in this case, regardless of the classification given this case, just as the Supreme Court of Georgia applied it in *Lawrence*.

[17] (Citation and punctuation omitted.) *Tennesco, Inc.*, supra at 48; see also *Jett v. State*, 230 Ga. App. 655, 656 (2) (498 SE2d 274) (1998) (physical precedent only); *Petty v. Chrysler Credit Corp.*, 169 Ga. App. 418 (312 SE2d 874) (1984); *Chambers*, supra at 381.

properly asserted his privilege against self-incrimination if he determined that the questions might incriminate him.

We acknowledge that this case is distinguishable from those cases in which we have previously applied the *Mallin* standard in the sense that the trial judge here did not have the opportunity to make the determination on the inculpatory nature of the questions at the time Begner asserted the privilege. Begner had testified at an administrative hearing, not at a proceeding where the judge herself would have been present. In light of this, in order to follow the proper procedure, the judge in this case must have, and should have, made the determination at the subsequent hearing on the motion for contempt.

The United States Supreme Court's language from *Hoffman* provides guidance on how to apply the proper standard: "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."[18] In making the determination, the trial judge "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."[19] Although not binding on this Court, the language of the United States Court of Appeals, Sixth Circuit, in its analysis and application of *Hoffman* is instructive: "a real danger of prosecution . . . exists where questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed."[20]

The transcript of the hearing on the Commission's motion for contempt indicates that the trial judge did not make the inquiries as required by *Mallin*. However, we cannot determine that the trial judge improperly held Begner in contempt, but only that she prematurely held him in contempt. To reiterate, the fact that Begner asserted the privilege would not create a prima facie case that he violated the trial court's orders. Only once the inquiries were made, and the judge determined that there was no reasonable basis for Begner's fear of prosecution, could Begner be properly held in contempt. Because *no* order can require someone to testify in a way that could be incriminating, the question of whether Begner validly asserted the privilege is critical in determining whether he was in contempt.

We therefore vacate the order finding Begner in contempt and remand this case to the trial judge to conduct a hearing in which the Commission discloses exactly which questions it intends to ask, and the trial judge conducts the proper inquiries to determine if the pur-

---

[18] *Hoffman,* supra at 486-487.
[19] (Punctuation omitted.) Id. at 487.
[20] *In re Morganroth v. Fitzsimmons,* 718 F2d 161, 167 (6th Cir. 1983).

ported questions could be incriminating. If she determines that they could be incriminating, then the burden shifts to Begner to decide if the answers to the questions might be incriminating. If the answer is "yes," then Begner may properly invoke his privilege against self-incrimination. If, however, the trial judge determines that the questions posed by the Commission could not be incriminating, then she may order Begner to answer the questions and may properly hold Begner in contempt should he refuse to answer them.

For the purposes of remand, it is necessary to address one additional issue. Although not raised on appeal, Begner has previously declined to answer certain questions regarding the contribution on the basis of the attorney-client privilege.[21] It is important to note that this would not be a valid assertion in this case for two reasons. First, the mere fact of employment between attorney and client is not protected from disclosure.[22] Second, under the crime-fraud exception, the privilege may not be used to enable persons to carry out contemplated crimes against society, frauds or perjuries.[23] If, as was allegedly the case here, the client used the attorney as the instrument by which he perpetrated a crime, the crime-fraud exception would preclude the attorney from invoking the attorney-client privilege in respect to testimony regarding the crime.

2. In light of our holding in Division 1, we do not find it necessary to address Begner's second enumeration of error, i.e., that the Commission, by its own rules, was not permitted to initiate the type of self-initiated inquiries at which Begner was summoned to testify.

*Judgment vacated and case remanded with direction. Ruffin and Ellington, JJ., concur.*

DECIDED JULY 2, 2001.

*G. Brian Spears*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General*, for appellee.

---

[21] See OCGA §§ 24-9-21 (2); 24-9-24.

[22] See *Cranford v. Cranford*, 120 Ga. App. 470, 473 (2) (170 SE2d 844) (1969); *Parrott v. State*, 206 Ga. App. 829, 835-836 (6) (427 SE2d 276) (1992).

[23] See *Marriott Corp. v. American Academy of Psychotherapists*, 157 Ga. App. 497, 502 (3) (b) (277 SE2d 785) (1981).