A05A2142. DEMPSEY et al. v. KAMINSKI JEWELRY, INC.

(630 SE2d 77)

MILLER, Judge.

Kaminski Jewelry, Inc. brought suit against its ex-employee Diane Dempsey to recover money she allegedly stole. In the course of discovery, the trial court granted Kaminski Jewelry's motions to compel the depositions of Dempsey and her husband as well as the production of documents. The trial court also granted Kaminski Jewelry attorney fees in the amount of $3,500. The Dempseys applied to this Court for interlocutory review, arguing that a compelled response to the discovery requests might provide information essential to the pending criminal case against them and thus violate their privilege against self-incrimination. We conclude that although the trial court's grant of Kaminski Jewelry's motions to compel does not violate the privilege against self-incrimination or other privileges, the Dempseys had no opportunity to be heard on the matter of attorney fees. For these reasons we affirm in part, vacate in part, and remand to the trial court for a hearing on the issue of attorney fees.

In May 2004, Diane Dempsey was arrested on charges of stealing more than $100,000 in cash and goods from her employer, Kaminski Jewelry. An indictment has not yet been issued in the criminal case.[1] On January 14, 2005, Kaminski Jewelry sued Mrs. Dempsey for compensatory and punitive damages as well as fees in connection with the theft. Kaminski Jewelry then served Mrs. Dempsey with a notice of deposition as well as a request for documents including checks, tax returns, and other financial records. Kaminski Jewelry also served Mr. Dempsey with a subpoena for and notice of deposition.

Invoking various privileges, the Dempseys sought a protective order. Mrs. Dempsey also requested a stay. Kaminski Jewelry responded with motions to compel. At a hearing held on April 11, 2005,

---

[1] We note that the issues in this appeal might very well have been avoided if the civil suit had been brought after the criminal matter had concluded.

Kaminski Jewelry amended its motion to include a request for attorney fees. The Dempseys objected to the amendment, opposing any award of attorney fees without prior notice and an evidentiary hearing. The trial court denied the Dempseys' motions, granted Kaminski Jewelry's motions to compel, and awarded $3,500 in attorney fees to Kaminski Jewelry. The trial court also issued a certificate of immediate review. The Dempseys applied for interlocutory review of the trial court's order, which we granted.

On appeal, the Dempseys argue that the trial court's order violates the privilege against self-incrimination, the spousal communications privilege, and the privilege against the disclosure of evidence tending to work a forfeiture of estate. The Dempseys also assert that the trial court erred in ordering Mr. Dempsey to sit for a deposition despite his medical unavailability, and that the award of attorney fees was made without notice and without evidence to support it.

We will not reverse a trial court's ruling on discovery matters in the absence of an abuse of discretion. *Emmett v. Regions Bank*, 238 Ga. App. 455, 456 (1) (518 SE2d 472) (1999).

1. The Dempseys' central argument is that the trial court's grant of Kaminski Jewelry's motions to compel violates their privileges against self-incrimination. They also argue that they need not produce spousal communications or evidence tending to work a forfeiture of estate. We disagree.

(a) The Fifth Amendment of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. The Georgia Constitution contains a similar privilege against self-incrimination, providing that no person shall be compelled to give testimony tending in any manner to be self-incriminating. Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. The privilege is also codified in OCGA § 24-9-27 (a): "No party or witness shall be required to testify as to any matter which may criminate or tend to criminate himself or which shall tend to bring infamy, disgrace, or public contempt upon himself or any member of his family." This privilege against self-incrimination extends not only to those answers that would in themselves support a conviction, but also to answers creating a "real and appreciable" danger of establishing a link in the chain of evidence needed to prosecute. *Axson v. Nat. Surety Corp.*, 254 Ga. 248, 250 (327 SE2d 732) (1985); see also *Begner v. State Ethics Comm.*, 250 Ga. App. 327, 330 (1) (552 SE2d 431) (2001).

There is no blanket Fifth Amendment right to refuse to answer questions in civil proceedings, however. "The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim."

(Citation omitted.) *Tennesco, Inc. v. Berger*, 144 Ga. App. 45, 48 (3) (240 SE2d 586) (1977); see also *Axson*, supra, 254 Ga. at 249.

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.

(Punctuation omitted.) *Page v. Page*, 235 Ga. 131, 133, n. 1 (218 SE2d 859) (1975), quoting *Hoffman v. United States*, 341 U. S. 479, 486-487 (71 SC 814, 95 LE 1118) (1951).

(i) The Dempseys first contend that their motions to quash the deposition subpoenas should have been granted because their deposition testimony might tend to incriminate them in the pending criminal matter. This is not the law in Georgia. Although the Dempseys are free to assert their privilege against self-incrimination in response to specific questions at a deposition, they are not permitted to "slide out of [their] obligations by a brash assertion that any and all questions directed to [them] would tend to incriminate [them]." *Tennesco*, supra, 144 Ga. App. at 48 (3). Only when the privilege is asserted in response to a specific question could a trial court hold that the claim of privilege is justified. See *Page*, supra, 235 Ga. at 133; *Begner*, supra, 250 Ga. App. at 330 (1).

(ii) The Dempseys also contend that compelling them to produce financial documents such as checks, account statements, and tax returns is tantamount to forcing them to incriminate themselves in the pending criminal investigation. We disagree.

It is well established that a criminal defendant may be forced to submit to physical tests without implicating the privilege against self-incrimination, since such tests do not force the defendant to "do an act" against his will. See, e.g., *Creamer v. State*, 229 Ga. 511, 516-518 (192 SE2d 350) (1972) (removal of bullet from murder defendant's body does not implicate privilege); compare *Aldrich v. State*, 220 Ga. 132, 134-135 (137 SE2d 463) (1964) (statute requiring truck driver to drive onto state scales violated privilege); *Day v. State*, 63 Ga. 667, 668-669 (2) (1879) (forcing defendant to place foot in shoe print near scene of burglary violated privilege). The Supreme Court of Georgia has also held, however, that a party may claim the privilege as to financial information sought by interrogatory, since the responses to such questions "might tend to incriminate" a person as a matter of law. *Mallin v. Mallin*, 227 Ga. 833, 835 (2) (183 SE2d

377) (1971) (affirming denial of motion to compel answers to interrogatories); see also *Busby v. Citizens Bank of Hapeville*, 131 Ga. App. 738, 740-741 (206 SE2d 640) (1974) (physical precedent only) (reversing order of contempt against defendants in fi. fa. for failing to answer post-judgment interrogatories concerning finances).

The crucial distinction between those Georgia cases which automatically implicate the privilege and those which do not necessarily implicate it is that the State cannot compel a person to commit an act which will have the result of creating incriminating evidence against him, whereas the State may force a person to submit to procedures reasonably undertaken to recover existing evidence from him, even to the point of invading his body against his consent. See *Creamer*, supra, 229 Ga. at 518. The act of producing a document, financial or otherwise, does not in itself automatically *create* evidence by means of a testamentary act in the way that placing a foot in a shoe print, responding to a pre-trial interrogatory, or testifying at trial does.[2] Instead, as here, where the trial court has found that the act of producing the information is not sufficiently incriminating to implicate the right against self-incrimination, the act may merely allow access to evidence already in existence, like the operation to recover a bullet in a defendant's body. Were we to accept the Dempseys' argument in this context, moreover, litigants in civil cases involving fraud — a large and important category indeed — could arguably always refuse to produce relevant financial documents on the ground that a looming criminal case raised the specter of self-incrimination by document. Thus we conclude that the Dempseys cannot successfully resist the production of the financial documents here because, however damaging the information in them might be, the act of producing such documents under the facts of this case does not implicate the privilege against self-incrimination. Id. at 518 (3); see also *Tennesco*, supra, 144 Ga. App. at 48 (3) (reversing trial court's denial of motion to compel answers to post-judgment interrogatories). The trial court did not abuse its discretion when it denied the Dempseys' motions for protective order and stay on this ground.

The dissent's attempt to characterize our holding as permitting the Georgia Constitution to provide an insufficient level of protection is misplaced. We are well aware that the act of producing documents can violate the privilege against self-incrimination under both the Georgia and United States Constitutions. As we held above, however,

---

[2] There are certain circumstances, not present here, where the act of producing financial documents could violate the Fifth Amendment right against self-incrimination. See *United States v. Doe*, 465 U. S. 605, 613-614 (III) (B) (104 SC 1237, 79 LE2d 552) (1984).

the trial court did not *abuse its discretion* in finding that the privilege was not implicated and therefore not violated through compelling production of the documents here. Indeed, as the United States Supreme Court has made clear, when any evidence supports a trial court's finding on the question whether the privilege against self-incrimination is implicated through the production of documents, an appellate court cannot substitute its judgment for that of the trial court. See *United States v. Doe*, 465 U. S. 605, 613-614 (III) (B) (104 SC 1237, 79 LE2d 552) (1984) (trial court's factual determination as to whether Fifth Amendment is implicated through act of producing documents will not be disturbed on appeal where supported by any evidence). Here, there is no transcript of the hearing at which the trial court made its finding that the right against self-incrimination was not implicated. Thus, we must presume that evidence supported the trial court's finding. See, e.g., *Hooks v. Gates*, 162 Ga. App. 434 (1) (291 SE2d 569) (1982). Therefore, we cannot, under the appropriate standard of review, reverse the trial court's judgment.

(b) Although communications between husband and wife are confidential and privileged (see OCGA §§ 24-9-21 (1); 24-9-23 (b)), such protections do not apply to financial documents either prepared or seen by third parties. *Leventhal v. Seiter*, 208 Ga. App. 158, 165 (10) (430 SE2d 378) (1993) (bank statement addressed to wife does not amount to spousal communication). Thus the trial court did not abuse its discretion when it granted Kaminski Jewelry's motion to compel the production of documents on this ground.

(c) Mr. Dempsey has cited no law for the proposition that a compelled discovery response could in itself work a forfeiture of estate. See OCGA § 24-9-27 (b). Nor has he shown how the privilege would actually apply in this case. See *Tennesco*, supra, 144 Ga. App. at 46 (2). The trial court did not err when it denied his motion for protective order on this ground.

2. Mr. Dempsey attached an affidavit from his attending physician in support of his motion for a protective order to the effect that because Mr. Dempsey's heart condition requires that he avoid all stressful situations, Mr. Dempsey is not fit to sit for a deposition. We are in no position to substitute our judgment for that of the trial court, and cannot say that the trial court abused its discretion when it found this evidence insufficient to justify a grant of Mr. Dempsey's motion for protective order. See *Williford v. Williford*, 230 Ga. 543, 544 (198 SE2d 181) (1973) (trial court did not abuse discretion ordering person into court even when doctor's affidavit stated that appearance would be detrimental to person's health).

3. As Kaminski Jewelry concedes, the trial court failed to conduct the necessary evidentiary hearing on the matter of attorney fees. Thus we vacate that portion of the court's order, and remand the case

so that the trial court may "conduct a hearing as to whether attorney fees are warranted in the instant case and the appropriate amount of fees to assess, if any," with the Dempseys having the right to appeal from the trial court's ruling on that matter. See *Rowan v. Reuss*, 246 Ga. App. 139, 141 (1) (539 SE2d 241) (2000).

*Judgment affirmed in part, vacated in part, and case remanded. Andrews, P. J., Blackburn, P. J., Smith, P. J., Ellington and Mikell, JJ., concur. Bernes, J., dissents in part and in the judgment.*

BERNES, Judge, dissenting in part and in the judgment.

I respectfully dissent from Division 1 (a) (ii) and thus from the judgment reached by the majority. In that division, the majority addresses whether compelling the Dempseys to produce certain financial documents to Kaminski Jewelry, Inc. violates the Dempseys' federal and state constitutional privilege against self-incrimination. Georgia precedent, not addressed by the majority, clearly establishes that forcing a party to produce documents can violate the privilege against self-incrimination embedded in the Georgia Constitution. See Ga. Const. of 1983, Art. I, Sec. I, Par. XVI; OCGA § 24-9-27 (a). Furthermore, the record reflects that production of the financial documents at issue may be incriminatory as a matter of law under the framework established by our case law. Thus, in my view, the trial court erred by denying the Dempseys' motions for a protective order.

As an initial matter, I agree with the majority's conclusions that, under the circumstances of this case, requiring the Dempseys to produce the requested documents does not violate the right against self-incrimination under the federal Constitution. Because of the fact-specific nature of the inquiry under the federal Constitution,[3] we

---

[3] Because the privilege against self-incrimination protected by the United States Constitution applies only to testimony, "the *contents* of voluntarily prepared business records are not protected by the fifth amendment privilege." (Emphasis supplied.) *United States v. Argomaniz*, 925 F2d 1349, 1355-1356 (11th Cir. 1991). However, under certain circumstances the *act of producing* documents is considered sufficiently testimonial to itself implicate the privilege protected by the federal Constitution. *United States v. Doe*, 465 U. S. 605 (104 SC 1237, 79 LE2d 552) (1984). Thus, "the act of producing [documents] – if it is compelled, testimonial and incriminating – may, in itself be privileged." *Butcher v. Bailey*, 753 F2d 465, 469 (6th Cir. 1985).

As part of determining whether the privilege applies in this context, federal courts generally consider two factors. First, they look to whether "the existence and location of the [requested] papers are unknown to the government." (Citation and punctuation omitted.) *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, 1 F3d 87, 93 (2d Cir. 1993). If "the existence and location of the papers are a foregone conclusion" based on information already known to the government, the act of producing the documents does not implicate the privilege. *Fisher v. United States*, 425 U. S. 391, 411 (96 SC 1569, 48 LE2d 39) (1976). See also *United States v. Hubbell*, 530 U. S. 27, 45 (120 SC 2037, 147 LE2d 24) (2000); *United States v. Norwood*, 420 F3d 888, 895-896 (8th Cir. 2005). Second, federal courts look to whether the government "can independently authenticate the [documents] without using [the party's] act of producing the [documents] as evidence of their authenticity." *United States v. Rue*, 819 F2d 1488, 1494 (8th

must presume, absent a transcript, that the trial court conducted the requisite inquiry and that the evidence supported his factual determination that production of the documents would not be incriminating under the Fifth Amendment.

However, that does not end the inquiry. It is well settled that the state Constitution affords more protection than the federal Constitution in this context.

> Georgia has long granted more protection to its citizens than has the United States and . . . while the States cannot grant less protection they can grant more. . . . While the language in the United States Constitution has been construed to be limited to "testimony," the Georgia Constitution has been construed to limit the State from forcing the individual to present evidence, oral or real.

(Emphasis omitted.) *Creamer v. State*, 229 Ga. 511, 515-516 (3) (192 SE2d 350) (1972).

And, Georgia courts have on several occasions held that requiring a party to produce certain documents or things constitutes the doing of a self-incriminating act against his will in violation of the state Constitution. See, e.g., *Mallin v. Mallin*, 226 Ga. 628, 629 (176 SE2d 709) (1970) (defendant had a constitutional right to refuse to produce documents reflecting "income or financial status"); *Stanfield v. State*, 176 Ga. App. 424 (1) (336 SE2d 337) (1985) (defendant should not have been forced to produce results of additional blood test requested by defendant and conducted at local hospital); *Johnson v. State*, 156 Ga. App. 496, 499 (274 SE2d 837) (1980) (defendant could not be forced to produce an automobile, transceiver and flight manual in controlled substance prosecution); *J. D. Jewell, Inc. v. State ex rel. Hancock*, 227 Ga. 336, 339 (180 SE2d 704) (1971) (trial court should have granted defendant's motion to quash plaintiffs' request for production of documents, when it was clear that documents could be used to prove criminal contempt); *Grant v. State*, 85 Ga. App. 610, 613-614 (69 SE2d 889) (1952) (trial court erred in admitting lottery ticket which defendant was forced to produce). See also *Wilson v. State Bar of Ga.*, 225 Ga. 343, 346 (168 SE2d 584) (1969) (attorney in disciplinary proceeding may move to quash or modify notice to produce to resist the production of documents or records which might have the effect of incriminating him). These cases plainly hold that

---

Cir. 1987). See also *United States v. Clark*, 847 F2d 1467, 1473 (10th Cir. 1988). If the government can do so, then authentication of the documents is a foregone conclusion that does not sufficiently implicate the right against self-incrimination. *Rue*, 819 F2d at 1494; *United States v. Ghidoni*, 732 F2d 814, 819 (11th Cir. 1984).

the production of documents can constitute a self-incriminatory act under the Georgia Constitution.

Under most circumstances, "the fact that a party raises the privilege does not of itself establish the hazard of incrimination. It is for the court to say whether his [raising of the privilege] is justified." (Citation and punctuation omitted.) *Axson v. Nat. Surety Corp.*, 254 Ga. 248, 250 (327 SE2d 732) (1985). The relevant inquiry is whether the documents sought to be produced "would in themselves support a conviction" or "would provide a link in the chain of evidence needed to prosecute." (Punctuation and footnote omitted.) *Begner v. State Ethics Comm.*, 250 Ga. App. 327, 330 (1) (552 SE2d 431) (2001). See also *Axson*, 254 Ga. at 250. The burden is upon the party invoking the privilege "to provide sufficient information on which the court may find that a real danger of incrimination exists." (Citation and punctuation omitted.) *Axson*, 254 Ga. at 250; *In re Purohit*, 213 Ga. App. 182, 184 (b) (444 SE2d 133) (1994).[4]

In contrast, under the limited circumstances where the request for production seeks to compel documents containing extensive and detailed financial information, settled Georgia precedent establishes that forcing the act of production may be incriminatory as a matter of law. In such circumstances, there is nothing for the trial court to determine because only the responding party can weigh the effect of such disclosure. Compare *Mallin v. Mallin*, 227 Ga. 833, 835 (2) (183 SE2d 377) (1971); *Begner*, 250 Ga. App. at 330 (1); *Busby v. Citizens Bank of Hapeville*, 131 Ga. App. 738, 740-741 (206 SE2d 640) (1974) with *Petty v. Chrysler Credit Corp.*, 169 Ga. App. 418 (312 SE2d 874) (1984); *Chambers v. McDonald*, 161 Ga. App. 380, 380-381 (1) (288 SE2d 641) (1982).

In their motion to compel, Kaminski Jewelry alleged that it was seeking production of the requested financial documents because it believed that the Dempseys deposited stolen funds in their personal bank accounts or used the stolen funds to purchase securities or other financial instruments, the interests and dividends of which would be reflected on their tax returns. As such, the requests for production sought all state and federal tax returns, bank statements, deposit slips and cancelled checks for all individual and joint accounts, savings account records, certificate of deposit records and money market records — *all for the past ten years*. Based on the precedent

---

[4] "If the trial court determines from all the circumstances that the danger of incrimination is not 'real and appreciable,' then the matter is subject to the attendant rules of discovery, including appropriate sanctions." (Citation and punctuation omitted.) *In re Purohit*, 213 Ga. App. at 184 (b). Conversely, "[i]f the trial court determines the privilege has been properly raised, then the matter is not discoverable, OCGA § 9-11-26 (b) (1)." (Citation and punctuation omitted.) Id.

cited above, as well as the fact that the criminal process is underway, I believe we are constrained to hold that the extensive and detailed financial documents sought for production may tend to incriminate the Dempseys as a matter of law and that the trial court therefore erred in requiring their production.[5] See *Mallin*, 227 Ga. at 835 (2); *Begner*, 250 Ga. App. at 330 (1); *Busby*, 131 Ga. App. at 740-741. Hence, in my view, we are bound to reverse the trial court's order on this ground.

Significantly, however, the factfinder in a civil case is entitled to draw an adverse inference from a party's refusal to produce documents and may infer that the documents would have been harmful. See *In the Matter of Henley*, 271 Ga. 21, 22 (2) (518 SE2d 418) (1999) (noting that an "adverse inference . . . could have been drawn had [defendant] refused production based upon his privilege against self-incrimination"); *Sanders v. State of Ga.*, 259 Ga. App. 422, 425-426 (2) (577 SE2d 94) (2003); *In the Interest of M. V.*, 253 Ga. App. 669, 672 (560 SE2d 125) (2002). The refusal to produce the documents constitutes "an implied admission that [the documents] would tend to prove that the [party] committed the act" of which he is accused. (Citations and punctuation omitted.) *Simpson v. Simpson*, 233 Ga. 17, 21 (209 SE2d 611) (1974); *In the Interest of S. B.*, 242 Ga. App. 184, 186-187 (1) (528 SE2d 278) (2000). Thus, contrary to the majority's assertion, a reversal in this case as to this issue would not give parties an incentive to "always refuse to produce relevant financial documents."[6]

DECIDED MARCH 28, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006 — 

*Sams, Larkin & Huff, David P. Hartin, Michael P. Pryor, William C. Gentry*, for appellants.
*Browning & Smith, Thomas J. Browning*, for appellee.

---

[5] Of course, the Dempseys' privilege against self-incrimination does not prevent Kaminski from seeking the documents from appropriate third parties.

[6] Additionally, as already noted, discovery sanctions are available to deter overly broad assertions of the privilege.