S07A1541. RIVERS v. THE STATE.
(657 SE2d 210)

SEARS, Chief Justice.

In 2006, a DeKalb County jury convicted Timothy Rivers of malice murder and related offenses arising out of the shooting death of James Mogardo. Rivers admits killing Mogardo but claims he did so in self-defense. Rivers's sole claim on appeal is that he received constitutionally ineffective assistance of counsel because his trial

attorney failed to discover and introduce the criminal record of one of the witnesses for the prosecution. Finding no merit in Rivers's claim, we affirm.[1]

1. The evidence presented at trial would have enabled a rational finder of fact to conclude as follows. On the evening of March 4, 2006, Brittnee Heard and Ashley Mata concocted a plan to commit a series of robberies to raise bail money for Heard's boyfriend. They enlisted the assistance of Timothy Rivers, a friend of Heard's boyfriend. The plan was simple. Seventeen-year-old Mata would distract a man in a parking lot with her sexual advances. Rivers would then approach and demand all his money, and Heard would drive the getaway car, her boyfriend's red Saturn.

Rivers and his compatriots put their plan into effect later that night and into the early morning hours of March 5, 2006. They committed two successful robberies — the first in the parking lot of a nightclub, the second in the parking lot of a restaurant — that netted them a total of $90. However, Heard needed more money to satisfy her boyfriend's bail, so the three set out again.

This time they chose the parking lot of a popular nightclub in a strip mall in DeKalb County. At approximately 3:20 a.m., Mata, who was driving, caught the eye of James Calhoun as he was walking to his car. Mata parked, got out of the car, and approached him. They spoke for a few minutes, but Calhoun was nervous, and he eventually proceeded to his vehicle. He did not leave, however, because his companion for the evening, Mogardo, was still in the club, and Mogardo was driving because Calhoun's license had been suspended.

Later Mata spotted Mogardo. She walked up, introduced herself, and began flirting with him. After a few minutes, the two walked to Calhoun's car. Calhoun was sitting on the passenger side of the front seat. Mata got into the back seat, while Mogardo took his position in

---

[1] Rivers committed his crimes on March 4 and 5, 2006. A DeKalb County grand jury indicted him for malice murder, felony murder, two counts of aggravated assault, and possession of a firearm during the commission of a felony on May 8, 2006. The jury found Rivers guilty of all charges, and the trial court sentenced Rivers on October 19, 2006. The trial court first vacated the felony murder conviction in light of the malice murder conviction as required by law, OCGA § 16-1-7; *Perkinson v. State*, 273 Ga. 491 (1) (542 SE2d 92) (2001); *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and merged the aggravated assault convictions into the malice murder conviction. The trial court then sentenced Rivers to life in prison for the malice murder conviction plus five years consecutive for possession of a firearm during the commission of a felony. The trial court later modified the sentence by suspending the five-year prison term for possession of a firearm during the commission of a felony. Rivers filed a motion for new trial on November 16, 2006, and amended it on March 6, 2007. The trial court entered orders denying the new trial motion on April 17, 2007, and June 18, 2007, and Rivers filed a timely notice of appeal. The case was docketed in this Court on June 27, 2007, and submitted for decision on the briefs.

the driver's seat. Mogardo and Mata continued talking for a while, with Calhoun simply observing.

At some point, the conversation stopped, and Calhoun noticed that Mogardo was watching Rivers as he walked towards the car. Mogardo retrieved a handgun from the glove compartment and placed it in his lap. Rivers made hand gestures indicating he wanted to purchase marijuana, and Mogardo rolled down the window a little bit to talk to him. Rivers asked if he could buy some "weed" but then pulled a gun from his sweatshirt, pointing it at Mogardo's head. Rivers demanded that Mogardo hand over his weapon, and when Mogardo reached for the gun, Rivers began firing. Mogardo returned fire as Rivers backed away from the vehicle, and a gunfight ensued.

Calhoun scrambled out of the car as soon as the shooting started and ran away. Mata crouched down in the back seat until the shooting stopped and then got out and ran back to the getaway car. Rivers limped towards the getaway car but could not make it all the way, and Heard backed up so Mata could help him. Heard then drove Rivers and Mata back to her apartment complex.

At the apartment complex, Heard and Mata laid Rivers out on the ground, called his girlfriend to come over, and hid the car. They then went inside to change their clothes and call the police. They told the police they were taking out the trash when they came across the wounded Rivers in the parking lot. They claimed that they did not know who Rivers was or how he had gotten there. Though seriously injured, Rivers survived. His victim, Mogardo, was not so fortunate. Mogardo, who was also seriously injured in the melée, later died from his wounds.

The evidence presented at trial was sufficient to enable a rational trier of fact to reject Rivers's self-defense argument and convict him of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.[2]

2. In order to prevail on his claim of ineffective assistance of trial counsel, Rivers must show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different.[3] However, "(i)n ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied."[4]

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship*, 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

[3] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Jones v. State*, 279 Ga. 854, 855 (622 SE2d 1) (2005).

[4] *Jackson v. State*, 282 Ga. 494, 497 (651 SE2d 702) (2007) (quoting *Fortson v. State*, 280 Ga. 435, 436 (629 SE2d 798) (2006)).

Rivers contends his trial attorney was deficient in failing to discover and introduce Calhoun's criminal history and active probationary status for impeachment purposes at trial. Even if we assume that trial counsel's performance was professionally deficient, Rivers's ineffective assistance of counsel claim must fail, because he has failed to demonstrate that but for this alleged error, there is a reasonable probability that the jury would have acquitted him on at least one charge. In support of his claim of prejudice, Rivers offers nothing more than his own speculation that had his trial counsel been successful in introducing Calhoun's criminal history and probationary status for impeachment purposes, there is a reasonable probability the jury would have acquitted him on at least one charge. But mere "[s]peculation is insufficient to satisfy the prejudice prong of *Strickland.*"[5] Accordingly, the trial court properly rejected Rivers's ineffective assistance of counsel claim.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 11, 2008.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Barbara B. Conroy, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.

---

[5] *Cormier v. State*, 277 Ga. 607, 608 (592 SE2d 841) (2004). See *Strickland*, supra, 466 U. S. at 693 ("Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant *affirmatively prove* prejudice. . . . Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. . . . Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they *actually had an adverse effect* on the defense.") (emphasis supplied).