## S08A0843. SMITH v. THE STATE.
(667 SE2d 65)

SEARS, Chief Justice.

In 2005, an Athens-Clarke County jury convicted Terry Lewis Smith of malice murder, felony murder, and aggravated assault for

---

stabbing his ex-girlfriend, Cashebia Lundy, to death. Smith appeals, arguing that: (1) there is no direct evidence and the circumstantial evidence did not exclude every reasonable hypothesis save for his guilt; (2) the trial court erred in admitting certain physical evidence and testimony; (3) the trial court erred in failing to declare a mistrial or replace a juror when it learned that the juror might have heard the contents of one bench conference at the very beginning of the trial; and (4) he was denied his Sixth Amendment right to the effective assistance of counsel. Finding no merit in these arguments, we affirm.[1]

1. The evidence presented at trial would have enabled a rational trier of fact to find as follows. Cashebia Lundy was stabbed to death in her front yard in the early morning hours of November 26, 2003. Lundy's mother and daughter discovered the body the following morning. The police were called, and suspicion immediately focused on Lundy's abusive former boyfriend, Terry Lewis Smith, with whom Lundy had broken up just three months earlier. The break-up was a tumultuous one, much like the years-long, violent relationship that preceded it. In the three months before her death, Smith stalked Lundy and threatened to kill her on numerous occasions, sometimes while brandishing a knife.

Around 2:00 a.m., shortly before the stabbing, the Lundys' next-door neighbor saw Smith sitting in a chair in the Lundys' front yard. Shortly thereafter, Smith made a brief, unplanned visit to his mother's home, and a few minutes after that, he called his mother and asked if the police were looking for him. Smith's mother received a similar call from one of Smith's friends later that morning asking her again if the police were looking for Smith. When the police arrived, looking for her son, Smith's mother called him and encouraged him to turn himself in.

---

[1] An Athens-Clarke County grand jury indicted Smith on charges of murder, felony murder, and aggravated assault on February 25, 2004. The jury convicted him on all charges on June 24, 2005. The felony murder conviction was vacated by operation of law, and the aggravated assault conviction merged into the malice murder conviction. *Rivers v. State*, 283 Ga. 108, 109, n. 1 (657 SE2d 210) (2008); *Sturgis v. State*, 282 Ga. 88, 88, n. 1 (646 SE2d 233) (2007). See OCGA § 16-1-7 (a) ("When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) [o]ne crime is included in the other . . . ."). The trial court sentenced Smith to life imprisonment with no possibility of parole. Smith filed a motion for new trial on June 28, 2005, an amended motion for new trial on August 20, 2007, and a second amended motion for new trial on August 22, 2007. The trial court entered an order denying Smith's new trial motion on August 30, 2007. The following day, the trial court entered an order vacating Smith's illegal sentence of life imprisonment without parole and sentenced him to life in prison. See *Miller v. State*, 283 Ga. 412, 417 (658 SE2d 765) (2008); *Funderburk v. State*, 276 Ga. 554, 555 (580 SE2d 234) (2003). Smith appealed on September 21, 2007. The case was docketed in this Court on January 30, 2008, and submitted for decision on the briefs.

The police finally located Smith at a friend's home where he had spent the night. The friend told a mutual friend of his and Smith's that Smith told him that he went to Lundy's house to talk to her, "she gave me a backhand or something," and "so I just went to stabbing her." Smith added, "I hope she [sic] around there about to die." The police matched the boots Smith was wearing that night to a footprint at the crime scene. Viewed in the light most favorable to the verdict, we have no difficulty concluding that the evidence presented at trial was more than sufficient to authorize a rational trier of fact to find Smith guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Smith claims there is no direct evidence that he killed Lundy and that the circumstantial evidence presented to the jury failed to exclude all other reasonable theories of the crime. OCGA § 24-4-6 provides that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other *reasonable* hypothesis save that of the guilt of the accused."[3] Smith has pointed to only one potentially reasonable alternative hypothesis of Lundy's death, i.e., that her current boyfriend did it. However, the jury rejected Smith's hypothesis after hearing the trial testimony of Lundy's boyfriend and evaluating the thorough and sifting cross-examination of his testimony by Smith's trial counsel. In addition, the evidence in the record established that Smith had a history of domestic violence against Lundy, had choked her on multiple occasions, had struck her in the face, on the body, and on her torso, and had threatened her with a knife several times. The evidence further showed that in the months leading up to Lundy's death, Smith gave her a black eye and stalked her, sometimes while wearing a white mask. Finally, the evidence proved that Lundy confided to her half-sister the week before the murder that Smith had threatened to kill her, and just hours before she was stabbed to death, Lundy told a friend that Smith said he "was going to kill [her] and live his life in prison." The facts established by the evidence support only one reasonable hypothesis of Lundy's death, namely, that Smith stabbed her to death in her front yard. This enumeration of error is meritless.

3. Smith claims the trial court erred in admitting his boots and certain testimony at trial. We review a trial court's evidentiary rulings under an abuse of discretion standard of review.[4]

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship*, 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

[3] (Emphasis supplied.)

[4] *Holmes v. State*, 275 Ga. 853, 855 (572 SE2d 569) (2002); *O'Neal v. State*, 254 Ga. 1, 3 (325 SE2d 759) (1985).

(a) *Smith's boots*. Smith contends the trial court erred in permitting the State to introduce the boots he was wearing the night of the crime because they were illegally seized following an impermissible warrantless arrest. It is well established that a " 'custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment,' " and that " 'that intrusion being lawful, a search incident to the arrest requires no additional justification.' "[5] Moreover, an accused's "clothing or other belongings may be seized upon arrival of the accused at the place of detention."[6] Thus, Smith's argument that the trial court should have excluded the boots turns on whether the police had probable cause for his arrest.

Smith's argument that the police lacked probable cause to arrest him is unfounded. At the time of Smith's arrest, the police had information that Smith and Lundy had a history of serious domestic violence, Smith had been barred from the property by the owner, Smith had nevertheless been there the evening of the murder, Lundy had been brutally stabbed to death, and Lundy's young daughter, who was home at the time of the crime, had identified Smith as the killer. There was probable cause to support Smith's arrest. Accordingly, the trial court did not abuse its discretion in admitting Smith's boots at trial.

(b) *Challenged testimony*. Smith contends the trial court erred in permitting the State to introduce improper character evidence in the form of testimony about Smith and Lundy's violent relationship, marks and scratches witnesses saw on Lundy's body, and confrontations between Smith and Lundy's father and brother. First, Smith failed to object to the admission of the testimony at trial, and he has therefore waived any right to allege error on this basis on appeal.[7] In any event, our own review of the record confirms that all the challenged testimony qualified as prior difficulties or similar transaction evidence.[8] Accordingly, the trial court did not abuse its discretion in admitting it.

(c) *Hearsay from the victim*. Smith contends the trial court erred in allowing witnesses to testify about statements Lundy made to them before she was killed because the State failed to present

---

[5] *United States v. Edwards*, 415 U. S. 800, 803 (94 SC 1234, 39 LE2d 771) (1974) (quoting *Abel v. United States*, 362 U. S. 217, 239 (80 SC 683, 4 LE2d 668) (1960)).

[6] *United States v. Edwards*, supra, 415 U. S. at 804.

[7] *Cobb v. State*, 283 Ga. 388, 390 (658 SE2d 750) (2008); *Bridges v. State*, 279 Ga. 351, 356 (613 SE2d 621) (2005).

[8] See *Griffin v. State*, 282 Ga. 215, 222 (647 SE2d 36) (2007) (prior difficulties evidence admissible to show motive, intent, and bent of mind); *Williams v. State*, 261 Ga. 640, 641-642 (409 SE2d 649) (1991) (standard for admitting similar transaction evidence).

sufficient evidence of trustworthiness to support their admission under the necessity exception to the hearsay rule. Smith also suggests that statements admitted under the necessity exception to the hearsay rule are inherently testimonial in nature and that their admissibility should therefore be evaluated under the Sixth Amendment Confrontation Clause analysis of *Crawford v. Washington.*[9]

Smith's suggestion that his Sixth Amendment right "to be confronted with the witnesses against him" was violated is a red herring.[10] The Confrontation Clause prohibits the introduction of only *"testimonial* statements of witnesses absent from trial."[11] None of the out-of-court statements by Lundy recounted at trial were even arguably "testimonial" as the United States Supreme Court had used that term in its recent Confrontation Clause jurisprudence.

Smith's argument that the trial court erred in admitting the statements under the necessity exception to the hearsay rule fares no better. As we recently reiterated:

> For hearsay to be admitted under the necessity exception, the proponent must establish that the testimony is necessary, that there are particularized guarantees of trustworthiness connected to the declarant's statements, and that the hearsay statements are more probative and revealing than other available evidence. Whether testimony was accompanied by particularized guarantees of trustworthiness is a matter for the trial court's discretion, and its decision will be upheld on appeal absent an abuse of that discretion. A trial court does not abuse its discretion when it admits . . . hearsay testimony consisting of uncontradicted statements . . . by an unavailable witness to individuals in whom the declarant placed great confidence and to whom the declarant turned for help with problems.[12]

Our independent review of the record confirms that the trial court did not abuse its discretion in holding that the out-of-court statements bore sufficient indicia of trustworthiness to qualify under the necessity exception to the hearsay rule.

4. Smith insists that the trial court erred in failing to declare a mistrial or to replace a juror when it learned that the juror might

---

[9] 541 U. S. 36, 42 (124 SC 1354, 158 LE2d 177) (2004).

[10] U. S. Const. Amend. VI.

[11] *Whorton v. Bockting,* 549 U. S. 406 (127 SC 1173, 167 LE2d 1) (2007) (quoting *Crawford v. Washington,* supra, 541 U. S. at 59) (emphasis supplied). See *Davis v. Washington,* 547 U. S. 813, 823 (126 SC 2266, 165 LE2d 224) (2006) ("[T]he Confrontation Clause applies only to *testimonial* hearsay . . . .") (emphasis supplied).

[12] *Miller,* supra, 283 Ga. at 414 (footnotes omitted).

have heard the contents of one bench conference at the very beginning of the trial. The juror was hearing-impaired, and a microphone in the courtroom fed directly into the juror's headphones. The bench conference was requested by the State, not Smith, because it planned to ask a law enforcement witness about a prior encounter with Smith and wanted the trial court to warn the officer outside the jury's presence not to mention unrelated misdemeanor charges and warrants that could arguably taint Smith's character. As soon as the issue with the microphone was discovered, the trial court discussed the situation with counsel for both sides and immediately corrected the problem.

First, any error was waived by trial counsel's failure to request a mistrial or substitution of the juror. Second, even if possible error were preserved for review, the trial court advised the parties of the problem as soon as it was discovered, and there is nothing in the record that shows definitively that the juror heard anything improper at all. Moreover, the trial court made it clear that it would keep the incident in mind throughout the rest of the trial and be especially vigilant to ensure that Smith received a fair and impartial jury trial. Finally, given the strength of the evidence against Smith, there is no realistic possibility that Smith was actually harmed by the microphone incident. Accordingly, the trial court did not abuse its discretion in failing to declare a mistrial or seat a replacement juror sua sponte.

5. Smith contends his trial counsel rendered prejudicially defective performance, thereby depriving him of his Sixth Amendment right to the effective assistance of counsel. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[13] The Georgia Constitution of 1983 likewise provides that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel."[14] Ineffective assistance of counsel claims are generally evaluated under the two-part deficient performance and resulting prejudice test announced by the United States Supreme Court in *Strickland v. Washington*.[15] Thus, in order to prevail on a claim of ineffective assistance of trial counsel, a defendant must show both that: (1) his or her counsel's performance was professionally deficient; and (2) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial

---

[13] U. S. Const. Amend. VI.

[14] Ga. Const. Art. I, Sec. I, Par. XIV.

[15] 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). See *Florida v. Nixon*, 543 U. S. 175, 178, 190 (125 SC 551, 160 LE2d 565) (2004); *Bell v. Cone*, 535 U. S. 685, 695 (122 SC 1843, 152 LE2d 914) (2002).

would have been more favorable to the defendant.[16] In reviewing an ineffective assistance of counsel claim, " 'this Court need not analyze the deficient performance prong if [we] determine that the prejudice prong has not been satisfied.' "[17] Furthermore, mere speculation is insufficient to satisfy the prejudice prong of *Strickland*.[18]

Smith contends that his trial counsel's performance was unprofessional to the extent he failed to preserve the allegations of error discussed above. As we have explained, however, each allegation is meritless, and the trial court would have been correct to overrule any objections and deny any other relief requested by Smith based on them. Consequently, Smith has failed to demonstrate prejudice, and his ineffective assistance of trial counsel claim therefore fails.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 22, 2008.

*M. Eric Eberhardt*, for appellant.

*Kenneth W. Mauldin, District Attorney, Nancee E. Tomlinson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.

---

[16] *Strickland*, supra, 466 U. S. at 687-696; *Jones v. State*, 279 Ga. 854, 855 (622 SE2d 1) (2005).

[17] *Jackson v. State*, 282 Ga. 494, 497 (651 SE2d 702) (2007) (quoting *Fortson v. State*, 280 Ga. 435, 436 (629 SE2d 798) (2006)).

[18] *Peterson v. State*, 284 Ga. 275 (663 SE2d 164) (2008); *Rivers v. State*, 283 Ga. 108, 111 (657 SE2d 210) (2008).