A08A2289. KILLINGS v. THE STATE.
(676 SE2d 31)

ADAMS, Judge.

A Clayton County jury found Travis J. Killings guilty of armed robbery. On appeal, Killings argues that the evidence was insufficient to support the verdict, that his custodial statement was improperly admitted into evidence, and that he received ineffective assistance of trial counsel. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that at approximately 9:00 p.m. on February 28, 2003, Juan Mata parked in front of his residence at the Willow Park Apartments. Two men armed with a "big gun" approached the car and asked whether Mata had any marijuana or money. The men then took $50

---

YALE LAW LIBRARY

or $60 from Mata. They ran into the woods when a neighbor saw that Mata was being robbed and cried out.

When the police arrived, Mata informed the officers that he had been robbed by two men at gunpoint. Officers searched in the direction that the suspects had fled and found a rifle in the bushes next to a building. Based on Mata's description, police detained Killings and his co-defendant, Travianna M. Pitts, approximately a quarter mile from the scene of the robbery. Police took Mata to where the two men were being held, and Mata identified them. During his trial testimony, Mata again identified Killings and Pitts as the perpetrators. Killings also gave a custodial statement to police in which he implicated himself in the robbery.

1. Killings contends that his armed robbery conviction cannot stand because the evidence was insufficient to prove that he was armed during the alleged crime. We disagree. According to Mata, the "tall one" was holding the gun and the short one did the talking. Testimony showed that Killings was the taller of the co-defendants, which would authorize the jury to conclude that Killings was armed. Furthermore, which of the two men physically carried the weapon is not determinative of whether Killings was guilty of armed robbery. See *Jones v. State*, 233 Ga. App. 362, 363 (504 SE2d 259) (1998) ("[a] person who participates in a criminal enterprise is responsible for the means by which it is accomplished").

Killings points out that the jury found him not guilty of the charge of possession of a firearm during the commission of a crime. Even if the jury's verdicts on the firearm possession and armed robbery charges were inconsistent, it does not follow that Killings's conviction for armed robbery must be reversed. Our appellate review of whether the evidence was sufficient to support Killings's conviction of armed robbery is "independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U. S. 57, 67 (105 SC 471, 83 LE2d 461) (1984). See *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986) (abolishing inconsistent verdict rule in criminal cases for reasons stated by the United States Supreme Court in *Powell*). Applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we find that the evidence was sufficient for any rational trier of fact to find Killings guilty of armed robbery beyond a reasonable doubt.

2. Killings claims that the trial court erred in admitting his in-custody statement to a police officer into evidence. We disagree.

Killings was a juvenile when he gave his statement to police. "The admissibility of statements by juveniles depends upon whether, under the totality of the circumstances, there was a knowing and intelligent waiver of constitutional rights." (Citation omitted.) *Allen v. State*, 283 Ga. 304, 305 (2) (658 SE2d 580) (2008). The burden is

on the State to show that the juvenile understood and waived his rights. Id. Factors to be considered include:

> (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.

(Citation and punctuation omitted.) *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976).

The evidence adduced at the *Jackson-Denno* hearing showed that Killings was sixteen years and nine months old and had completed the ninth grade at the time of the interview on March 4, 2003. Killings realized that he was charged with a serious crime. The detective explained the *Miranda* rights to Killings, including the right to remain silent and to consult with an attorney, and Killings acknowledged at the hearing that he read the rights himself, that the detective went over the rights with him, and that he told the detective he understood those rights. Killings's mother was not present during the interview, but the evidence fails to show that he requested the presence of or access to his mother or other family member. Killings had been arrested for armed robbery and was in custody at a juvenile detention center at the time of his interview, but he was indicted afterward. The interview lasted 30 to 45 minutes. The interviewing detective maintained that he neither threatened Killings nor promised him a benefit in exchange for the statement. During his hearing testimony, Killings acknowledged that the detective asked him to tell the truth and that he wrote his own statement in his own words. There was no evidence of a prior statement or that Killings had refused to make a prior statement. Although Killings challenged the admissibility of his statement, he did not repudiate the truth of what he told the detective.

Killings argues that he was misled to believe that his mother had consented to the interview and that his statement should therefore have been excluded. Killings testified that the interviewing officer claimed to have spoken to Killings's mother over the telephone and visited her at home, and that he told Killings that "she said it was all right" to question him. The mother testified that the interviewing

detective did not call to inform her that her son was going to be questioned, and that she neither saw nor spoke with the officer. The interviewing detective, on the other hand, testified that it was part of his standard procedure to notify the parents of a juvenile detainee before the interview. The detective maintained that he contacted the mother by telephone on the day of the interview and told her that he was with the Forest Park Police Department and that he intended to speak with her son. Although he could not remember her specific response, he did remember that she was cooperative.

Although Killings characterizes the evidence as uncontroverted, the testimony of the mother and the detective are in direct conflict. The trial court was not required to find that the detective either failed to contact Killings's mother or that he misrepresented the nature of that contact to Killings. "The trial court was entitled to determine the credibility of the witnesses and to believe the officers, and its findings were not clearly erroneous." (Citation and punctuation omitted.) *Norris v. State*, 282 Ga. 430, 432 (2) (651 SE2d 40) (2007). That Killings was interviewed outside the presence of his mother, although a factor to be considered by the trial court, did not preclude the admission of his statement. See *Allen*, supra, 283 Ga. at 305 (2) (a). Killings also argues that his age at the time of the interview weighed against the admission of his statement, but he was only three months shy of the age of seventeen, at which time he would not have been considered a juvenile by the criminal justice system. See *Woodard v. State*, 277 Ga. 49, 50 (2) (586 SE2d 330) (2003). Rather, Killings's age and other factors, such as his level of education and his knowledge of his right to consult with an attorney, the right to remain silent, and the seriousness of his situation, are consistent with his statement having been voluntarily made following a knowing and intelligent waiver of his rights. See *Murray v. State*, 276 Ga. 396, 397-398 (2) (578 SE2d 853) (2003). Accordingly, we conclude that the trial court, upon due consideration of the totality of circumstances, did not abuse its discretion in admitting the statement into evidence.

3. Killings contends that his counsel was ineffective in (i) failing to pursue a motion to sever and (ii) failing to properly investigate the case.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofes-

sional errors the result of the proceeding would have been different.

*Jackson v. State*, 277 Ga. 592, 593 (2) (592 SE2d 834) (2004). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "[I]n ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied." (Citation and punctuation omitted.) *Rivers v. State*, 283 Ga. 108, 110 (2) (657 SE2d 210) (2008).

(a) Killings's trial counsel filed a motion to sever Count 1 of the indictment from the trial. Count 1 charged Pitts with a burglary from the home of Billy Wayne Studdard between February 14, 2008 and February 28, 2008, while Counts 2 through 6 charged Pitts and Killings with offenses related to their February 28, 2008 encounter with Mata. The trial court initially granted the motion to sever upon consent by the State, but the count was re-joined after defense counsel withdrew the request. At the hearing on the motion for new trial, defense counsel testified that he withdrew the request because he did not believe that Killings would be prejudiced by the joinder.

Generally, "[t]he failure to file a motion to sever does not require a finding of ineffective assistance since the decision whether to seek severance is a matter of trial tactics or strategy, and a decision amounting to reasonable trial strategy does not constitute deficient performance." (Citations omitted.) *Harris v. State*, 279 Ga. 522, 529 (6) (615 SE2d 532) (2005). Killings argues that since his trial counsel acted on a perceived lack of prejudice rather than any possible benefit to his client, his decision not to insist on a severance of Count 1 should not be considered a choice amounting to reasonable trial strategy. But even if we were to accept Killings's argument and find that his trial counsel's performance was deficient, Killings fails to show he was prejudiced. See *Freeman v. State*, 282 Ga. App. 185, 187 (2) (638 SE2d 358) (2006) (failure to satisfy either prong of two-part test is fatal to an ineffective assistance claim). Even with Count 1 included, the facts were not overly complex, and the jury was asked to evaluate a limited number of charges involving only two defendants, and so the opportunity for confusion was small. See *Shannon v. State*, 275 Ga. App. 550, 553-554 (4) (621 SE2d 540) (2005). Killings speculates that "it cannot be said that the jurors did not believe [he] was involved in the burglary somehow," but he fails to point to any evidence of record that plausibly supports this assertion. Accordingly, we conclude that Killings has not shown a reasonable probability that but for trial counsel's alleged deficient performance the outcome of the trial would have differed, i.e., a reasonable probability that the jury would have acquitted Killings of armed robbery if Count 1 had been severed from the trial. See generally

*Johnson v. State*, 268 Ga. 416, 419 (4) (490 SE2d 91) (1997) (appellant failed to show either deficient performance or prejudice in claims of ineffective assistance, including counsel's failure to sever firearm possession charge).

(b) Killings also contends that his trial counsel was ineffective in failing to properly investigate the case. According to defense counsel, he prepared for the case by conferring with Killings and Pitts's counsel and by speaking with Mata and the detective who took Killings's in-custody statement. He did not, however, investigate the apartment complex where the crime occurred. Killings argues that the lighting at the apartment complex "would have been a key issue" in the credibility of Mata's identification testimony, and that defense counsel was therefore deficient in failing to pursue such an investigation. Killings failed to demonstrate, however, what an investigation would have shown with respect to the sufficiency of the lighting, and so any prejudice arising from his counsel's alleged deficient representation is a matter of pure speculation. "[M]ere speculation is insufficient to satisfy the prejudice prong of *Strickland*." (Citation and punctuation omitted.) *Rivers*, supra, 283 Ga. at 111 (2). It follows that whether or not his defense counsel was deficient in failing to investigate the apartment complex, Killings cannot show any prejudice arising therefrom.

In view of the foregoing, the trial court properly rejected Killings's claims of ineffective assistance of counsel.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 23, 2009.

*John P. Rutkowski, Romin V. Alavi*, for appellant.
*Jewel C. Scott, District Attorney*, for appellee.