**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2020**

# In the Court of Appeals of Georgia

A20A0611. CUPSA v. THE STATE.                    DO-023 C

DOYLE, Presiding Judge.

Following a jury trial, Cornelius Cupsa was convicted of armed robbery,[1] false imprisonment,[2] and possession of a firearm during the commission of a felony.[3] Cupsa appeals the denial of his subsequent motion for new trial, alleging that the trial court plainly erred in responding to a jury question and that trial counsel was ineffective. For the reasons that follow, we affirm.

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-41 (a).

[3] OCGA § 16-11-106 (b) (1).

Viewed in the light most favorable to the verdict,[4] the record shows that on April 2, 2015, K. F., a prostitute who had been seeing Joshua Smith for about six months after meeting him on Craigslist, summoned him to a hotel room in Suwanee after confirming the meeting multiple times. When Smith got to the hotel room, K. F. invited him in; as the door closed behind him, one man attacked him from behind while Cupsa and another man rushed out of the bathroom wielding guns. K. F. told the men, "Don't hurt him, don't kill him," said she was sorry, and fled the room. Cupsa and the two men – Andy Ulysse and Teddy Williams – took Smith's cell phone, cash, debit card, and a cannabis vape pen. At one point, one of the men put a pillow against the back of Smith's head, cocked his gun, and told Smith they were going to kill him unless he gave them the PIN number to his debit card. Cupsa, while wielding a handgun, patted Smith down, directing him not to move.

Cupsa, Williams, Ulysse, K. F., and Mary Puckett — Ulysse's girlfriend — were all charged in the same indictment with crimes stemming from Smith's robbery. Cupsa, who was tried separately, presented a coercion defense, claiming that Ulysse forced him to participate in the robbery. According to Cupsa, he was hanging out with

---

[4] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

the other co-defendants in the hotel room, and he went to his car to retrieve his gun at Ulysse's suggestion. Cupsa further testified that when he returned to the room, Ulysse had a handgun and Williams had a shotgun; Williams pointed the shotgun at everyone in the room and threatened to kill anyone that spoke about the situation that was going to take place. Ulysse pulled Cupsa aside and told him in an "authoritative" tone, "Hey, little bro, I need your help. We're about to rob somebody." According to Cupsa, "[i]t wasn't like I had an option." Cupsa admitted, however, that he personally removed things from Smith's pockets, but explained that he did so at Ulysse's direction.

K. F., however, testified that Cupsa participated in the conversation planning the robbery, and that no one threatened him with death or bodily injury if he did not participate. Ulysse also testified, explaining that he was serving time as a result of his guilty plea to the robbery of Smith. Ulysse testified that Cupsa was present for the robbery, but he "[did not] recall" whether he threatened to kill Cupsa if he failed to participate, and Ulysse said that because he "was on drugs, tripping," he "may have" threatened Cupsa with great bodily injury. Although Ulysse did not "recall" stating to the court during his guilty plea that he did not force Cupsa to participate in the robbery, he also testified that "[e]verybody did participate" in the robbery.

3

At the conclusion of the trial, the jury found Cupsa guilty of all three charges. The trial court denied his subsequent motion for new trial, and this appeal followed.

1. Cupsa contends that the trial court plainly erred when responding to a question from the jury during deliberations. We find no basis for reversal.

During deliberations, the jury sent the following written question to the trial court: "If we determine the defendant was coerced, will that automatically apply to all three [counts], all not guilty, or can we still find him guilty on some [counts]?" The trial court proposed a response to which the parties affirmatively stated they had no objection. The court then gave the jury the proposed response: "The jury must make an independent determination with regard to each of the three counts you are considering, taking into account all of the evidence and the charge of the [c]ourt." Again, counsel for the State and Cupsa both advised they had no objection to the response.

As Cupsa concedes on appeal, because he failed to object to the trial court's response to the jury's question, we review this enumeration for plain error under OCGA § 17-8-58 (b).[5]

---

[5] *Hampton v. State*, 302 Ga. 166, 167 (2) (805 SE2d 902) (2017).

4

Plain error review involves four steps. First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.[6]

Cupsa has failed to demonstrate legal error. The trial court's response to the jury is a correct statement of law. The court previously had instructed the jury that the State was required to prove each element of the crimes charged beyond a reasonable doubt, and it gave the pattern charge on coercion. Georgia trial courts are prohibited from expressing to the jury its opinion as to the guilt of the defendant or as to whether an element of the crime has been proved.[7] Given the content of the response, the

---

[6] (Citation and punctuation omitted.) Id. at 167-168 (2), quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

[7] See OCGA § 17-8-57 (a) (1) ("It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.").

5

charge as a whole and the applicable law, the trial court's response to the jury's question did not constitute plain error.

2. Cupsa also argues that trial counsel was ineffective in several ways.

> To prevail on his claim of ineffective assistance of trial counsel, [Cupsa] must prove both that counsel's performance was professionally deficient and that he was prejudiced by the deficient performance. To prove deficient performance, [Cupsa] must show that his counsel performed in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. To prove prejudice, [Cupsa] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden is a heavy one. And if [Cupsa] fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland*[8] test.[9]

(a) Cupsa alleges that trial counsel was inefficient by failing to object to the trial court's response to the jury's question on coercion. As we concluded in Division

---

[8] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[9] (Citations and punctuation omitted.) *Deloach v. State*, ___ Ga. ___, ___ (2) (Case No. S19A1299, decided Mar. 13, 2020).

1, however, the trial court's response was not erroneous. "Failure to make a meritless objection cannot be evidence of ineffective assistance."[10] Accordingly, the trial court properly denied Cupsa's motion for new trial on this basis.

(b) Cupsa also argues that trial counsel was ineffective by failing to present evidence of K. F.'s bias, specifically, that she received a reduced sentence in exchange for her testimony. Cupsa points out that trial counsel observed portions of the separate trial of Puckett, during which K. F. testified that in exchange for her truthful testimony, she received a reduced sentence for the crimes against her arising from the instant robbery. [11]

There was no evidence presented at the motion for new trial hearing or otherwise that K. F. received a reduced sentence in exchange for her testimony at *Cupsa's trial*. Pretermitting, however, whether trial counsel was deficient, Cupsa has failed to establish a reasonable probability that, but for the alleged deficiency, the outcome of the trial would have been different. During its direct-examination of K. F., the State elicited her testimony that she was serving time in prison for the charges

---

[10] (Punctuation omitted.) *Jackson v. State*, 330 Ga. App. 108, 117 (4) (e) (766 SE2d 558) (2014).

[11] The transcript of Puckett's testimony is included in the record on this appeal.

related to the April 2, 2015 robbery. Furthermore, the trial court charged the jury on impeachment by prior conviction, including specific reference to K. F.[12] Essentially, Cupsa "offers nothing more than his own speculation that had his trial counsel been successful in introducing [K. F.'s plea deal] for impeachment purposes, there is a reasonable probability the jury would have acquitted him on at least one charge. But mere speculation is insufficient to satisfy the prejudice prong of *Strickland*."[13] Under these circumstances, the trial court did not err by denying Cupsa's motion for new trial on this basis.[14]

---

[12] Specifically, the trial court charged: "In determining the credibility of witnesses and any attack — any testimony, rather, by them in court, you may consider, where applicable, evidence offered to attack the credibility of any such witness. This would include evidence of: Felony conviction. With regard to the witness [K. F.], proof that the witness has been convicted of the offenses of [r]obbery and [f]alse [i]mprisonment."

[13] (Punctuation omitted.) *Rivers v. State*, 283 Ga. 108, 111 (2) (657 SE2d 210) (2008). See also *Williams v. State*, ___ Ga. App. ___, ___ n.38 (Case No. A19A2021, decided Feb. 21, 2020) ("'It is important for appellate judges to remember that a defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials.'").

[14] See id. See also *Crowder v. State*, 294 Ga. 167, 169-170 (3) (751 SE2d 334) (2013); *Davis v. State*, 312 Ga. App. 328, 332 (3) (718 SE2d 559) (2011).

(c) Finally, Cupsa contends that trial counsel was ineffective by failing to fully review all of the discovery or to present exculpatory evidence in the police file. This argument presents no basis for reversal.

(i) Defense counsel interviewed Ulysse at the jail. Several days before trial, defense counsel went to the prosecutor's office and listened together to "two or three" recordings of jail calls made by Ulysse, including one that was ultimately introduced at trial. Before defense counsel left, the prosecutor gave him two discs: one containing 170 recordings of Ulysse's jail recordings, and a second containing a recording of the prosecutor's interview of Ulysse. Trial counsel did not review either disc, and as a result, he was unaware until after the trial that there were recordings of Ulysse's jail calls other than the few he reviewed with the prosecutor or that the prosecutor had interviewed Ulysse.[15]

At trial, the State played a portion of a single recording of a jail call from Ulysse. In the remaining portion of the same jail call, Ulysse stated: "[Cupsa] didn't want to say no because if he said no, he didn't know how I was going to take it and

---

[15] Trial counsel did not know the contents of the two discs until appellate counsel made him aware after she reviewed his files. We note that in its order denying the motion for new trial, the trial court found that "[d]uring the motion for new trial, counsel testified that he had reviewed all discovery provided by the State, including the discs." This finding is not supported by the transcript.

9

what I was going to do, what I was going to do to him." In the recording of Ulysse's interview, the prosecutor sought to determine how Ulysse would testify at trial. In response, Ulysse stated: "[Cupsa] was afraid of me. . . . I was using coke. I was waving the pistol around and may have scared the hell out of him. I was using coke – I got a short temper. I wave a pistol around. I probably scared the hell out of him." When the prosecutor asked Ulysse if he threatened Cupsa to do things, Ulysse responded, "I may have, I may have not. We're using drugs. I have a gun in my hand. I get violent[,] and I got a short temper. . . . I don't know what I said to him. If he said I said it to him, I might have. . . . I planned the whole thing and told him what to do. . . . I'm still working on my anger. . . . I think [Cupsa] was scared as hell." The prosecutor then told Ulysse, "We [are] just trying to get the truth . . . to figure out Cupsa's role."

At the motion for new trial hearing, Cupsa's trial counsel explained that he did not review the discs the prosecutor supplied because "I thought I had heard all of those calls[,] . . . I had no idea there were more than just those jail calls on them." Trial counsel characterized Ulysse as "a slippery, slippery person," explaining that during his interviews of Ulysse, Ulysse "never said the same thing. So I was afraid to call him because I felt like he was a complete unknown"; counsel also testified that

10

"I was worried about cross-examining [Ulysse]. . . based on my conversations with [him] at the jail, I felt like I could not control that guy, so I was worried about getting into anything with him." Trial counsel also testified, however, that had he been aware of Ulysse's jail call indicating that Cupsa was afraid to refuse to participate in the robbery and Ulysse's statement to the prosecutor that he "may have" threatened Cupsa, who was "scared as hell," counsel would have played the recordings at trial.

Pretermitting whether trial counsel's failure to review the discs after his meeting with the prosecutor was deficient, Cupsa has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had trial counsel discovered the evidence and introduced it at trial, given (a) Ulysse's trial testimony that he was on drugs at the time of the robbery; he "[did not] recall" whether he threatened to kill Cupsa if he failed to participate; he "may have" threatened Cupsa with great bodily injury; and that "everybody" participated in the robbery; and (b) Cupsa's testimony that it was *Williams* who threatened everyone and pointed a shotgun at him, and that Ulysse told him in an "authoritative" tone, "Hey, little bro, I need your help. We're about to rob somebody."[16] In light of this other evidence, along with the strong evidence of his guilt — including testimony that

[16] See *Rivers*, 283 Ga. at 111.

Ulysse never threatened Cupsa, that Cupsa threatened Smith, that Cupsa participated in the robbery by patting down Smith and taking his property, and that Cupsa retained Smith's cell phone after the robbery — Cupsa has not met his burden to show a reasonable probability that the outcome of the trial would have been different had he introduced the recordings at issue.

(ii) Cupsa also alleges that trial counsel was ineffective by failing to introduce Ulysse's prior bad acts, specifically pointing to Puckett's testimony at her own trial that Ulysse beat her; that she was scared of him on the day of the robberies; and that she believed Ulysse would kill her and her family. Cupsa argues that admission of such evidence at his trial would have supported his coercion defense and that its omission prejudiced him.

Trial counsel observed portions of Puckett's trial, and he provided a copy of the transcript of that trial to Cupsa, asking him to review it and make notes. At the motion for new trial hearing, trial counsel was not presented with Puckett's testimony at her own trial about Ulysse, nor was he questioned about why he failed to call her as a witness.

> The absence of any such an explanation renders this [C]ourt unable to determine whether trial counsel's failure to [call Puckett as a witness]

constituted deficient performance or trial strategy. Without the testimony of trial counsel regarding the decision not to [call her], counsel's decision is presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim. Thus, [Cupsa] has failed to show deficient performance.[17]

(d) "Finally, we conclude that the cumulative prejudice from the deficiencies assumed in Division (2) (a), (b), and (c) do[es] not create a reasonable probability that the result of the proceedings would have been different in the absence of the deficiencies alleged."[18]

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[17] (Punctuation omitted.) *Hagan v. State*, 353 Ga. App. 534, 537 (3) (c) (839 SE2d 1) (2020), quoting *Thompson v. State*, 349 Ga. App. 1, 9-10 (3) (825 SE2d 413) (2019). See also *Duvall v. State*, 273 Ga. App. 143, 147 (3) (g) (614 SE2d 234) (2005).

[18] *Turner v. State*, ___ Ga. ___, ___ (2) (d) (842 SE2d 40) (2020), quoting *Jackson v. State*, 306 Ga. 69, 90 (829 SE2d 142) (2019) (recognizing that "the effect of prejudice resulting from counsel's deficient performance is viewed cumulatively") (citation and punctuation omitted).