**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A1150. BOWMAN v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Demetrius Bowman appeals his convictions for armed robbery, aggravated assault, aggravated battery and three counts of possession of a firearm during the commission of a crime.[1] Bowman's convictions were the result of his involvement in a home invasion. On appeal, Bowman does not challenge the sufficiency of the evidence. He contends instead that his custodial statements were not knowing and voluntary and thus were admitted into evidence in violation of his Fifth Amendment right against self-incrimination, and that his trial counsel was ineffective. Upon our review, we affirm.

1. Bowman first asserts that his custodial statements were admitted in violation of his Fifth Amendment right against self-incrimination. Bowman, who was 16 when

---

[1] The aggravated assault conviction merged into the armed robbery count and the three possession of a firearm counts merged for sentencing purposes.

he gave his custodial statement, contends that the trial court should not have considered the factors set forth in *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976), in ruling that this statements were admissible. *Riley* addresses a juvenile's waiver of his *Miranda*[2] rights while in police custody, but Bowman contends that the *Riley* factors do not apply here because his guardians did not consent in his presence to his police interrogation. Bowman maintains that his custodial statements were not knowing and voluntary because, as a minor, he should have been present when his guardians consented to him being interviewed by the police. Because he was not present when they consented, Bowman argues that he had no way of knowing what his guardians had been told, whether they had been informed of his *Miranda* rights, or whether they had actually consented at all.

While Bowman contends that *Riley* does not apply because his guardians did not consent in his presence to the custodial interview, our Georgia Supreme Court adopted the nine-factor analysis in *Riley* as a method for determining whether a juvenile made a knowing and voluntary waiver of his right to remain silent when he gave an incriminating statement outside his parents' presence. *Riley v. State*, 237 Ga. at 128. The presence or absence of a parent when the statement was made is simply

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SC 1602, 16 LE2d 694) (1966).

one factor to be considered in determining whether the statement was voluntary and admissible; it is not dispositive of the issue, as Bowman appears to suggest. See *Allen v. State*, 283 Ga. 304, 306 (2) (a) (658 SE2d 580) (2008) (the fact that mother was not present during custodial interview was a factor for the trial court to consider, but it was not determinative on the issue of voluntariness). It is well accepted, however, that

> confessions of juveniles must be scanned with more care and received with greater caution than those of adults. The question of a voluntary and knowing waiver depends on the totality of the circumstances, and the State has a heavy burden in showing that the juvenile did understand and waive his rights. However, as our Supreme Court has further explained, age alone is not determinative of whether a person can waive his rights. Instead, the question of waiver must be analyzed by a

consideration of several factors. Those factors include (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements

3

on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.

(Citations and punctuation omitted.) *Boyd v. State*, 315 Ga. App. 256, 256-257 (1) (726 SE2d 746) (2012).

Here, after the victim of a home invasion identified Bowman from his nickname "Peanut" and in a photographic lineup, police stopped the car in which Bowman was riding with his uncle and arrested him. The police impounded the car, but drove Bowman's uncle home. There, they told the uncle and grandmother, who were Bowman's guardians, about Bowman's suspected involvement in the home invasion, and received consent to search Bowman's room and consent to question Bowman. Police recovered a gun under Bowman's mattress, and his uncle told the officers that he knew the gun had not been there a few days before because he had changed the sheets on the bed.

Bowman was interviewed at the police station after being read his juvenile *Miranda* rights and consenting to the interview. He denied having anything to do with the robbery. He also said that he had not been on the street where the incident occurred for four months, denied having the nickname "Peanut," and denied having a weapon. He later admitted to being on the victim's street the day before the home

4

invasion and that he was sometimes called "Peanut." He also told officers that he had a gun and that he had purchased it as protection from a drug dealer to whom he owed money.

After conducting a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), the trial court applied the *Riley* analysis and concluded that Bowman's statement was admissible. The evidence demonstrated that Bowman was four months shy of his 17th birthday, and that he appeared to understand his juvenile *Miranda* rights when an officer explained them to him, including the right to talk with an attorney and have an attorney present when he was questioned. Bowman also read the juvenile *Miranda* rights out loud, and appeared to understand the charges against him. He told officers that he would talk with them without a lawyer present, and did not request the presence of his grandmother or uncle during the interview. The officers testified that there were no offers or promises made to Bowman in exchange for his statements, nor were there threats of injury. The interview lasted approximately 35 to 45 minutes. Bowman does not repudiate the truth of his statements, but instead challenges their admissibility based on the alleged absence of a valid consent in the presence of his guardians.

In these circumstances,

5

[t]he trial court was entitled to determine the credibility of the witnesses and to believe the officers, and its findings were not clearly erroneous. That [Bowman] was interviewed outside the presence of his [guardian], although a factor to be considered by the trial court, did not preclude the admission of his statement. . . . [Bowman] was only [four] months shy of the age of seventeen, at which time he would not have been considered a juvenile by the criminal justice system. Rather, [Bowman's] age and other factors . . . are consistent with his statement having been voluntarily made following a knowing and intelligent waiver of his rights. Accordingly, we conclude that the trial court, upon due consideration of the totality of circumstances, did not abuse its discretion in admitting the statement into evidence.

(Citations and punctuation omitted.) *Killings v. State*, 296 Ga. App. 869, 872 (2) (676 SE2d 31) (2009).

2. Bowman also contends that his trial counsel was ineffective for failing to move for a mistrial or request curative instructions when witnesses referred to his juvenile history and prior arrests, and also for failing to present evidence at the *Jackson-Denno* hearing. We do not agree.

[T]o prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable probability, i.e., a probability sufficient to undermine

6

confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different.

*Jackson v. State*, 277 Ga. 592, 593 (2) (592 SE2d 834) (2004). "[I]n ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied." (Punctuation and footnote omitted.) *Rivers v. State*, 283 Ga. 108, 110 (2) (657 SE2d 210) (2008).

Bowman asserts that the references by three different witnesses to his prior incarcerations and juvenile record tainted his presumption of innocence. The references were made by an officer who testified that he knew what Bowman looked like from a "book-in photo," another officer's remark that the photos in Bowman's lineup had been attached to reporting software, and the testimony of Bowman's uncle that Bowman was not home on the Friday night before the incident because he had been incarcerated. At the motion for new trial hearing, Bowman's attorney testified that she did not move for a mistrial because she believed the motion would have been overruled and she did not want to bring more attention to the statements. The strategy of avoiding an objection that would draw the jury's attention to unfavorable evidence, is not outside the wide range of reasonable professional assistance. *Sweet v. State*, 278 Ga. 320, 324 (5) (602 SE2d 603) (2004). Likewise, a fleeting reference to

possible criminal history is generally harmless, see *Gordian v. State*, 261 Ga. App. 75, 77 (2) (581 SE2d 616) (2003); thus, trial counsel was not ineffective for her strategic decision not to object. *Sims v. State*, 281 Ga. 541, 542-543 (2) (640 SE2d 260) (2007). Thus, this claim fails.

Likewise, Bowman's claim that trial counsel was ineffectiveness for failing to present evidence at the *Jackson-Denno* hearing, including testimony from his uncle and grandmother, also fails. He appears to argue that the additional evidence would have resulted in the suppression of his statements. In support of this claim, however, Bowman offers nothing more than his own speculation that had his trial counsel been successful in presenting testimony that his grandmother and uncle did not consent to his questioning, his statements would not have been admitted. As noted in Division 1, the officers testified that the uncle and grandmother gave their permission to question Bowman, and credibility issues were for the trial court's determination. Furthermore, Bowman's grandmother testified at trial that she could not recall whether she gave the officer's permission to question Bowman, but that she would have given it to them if asked. Finally, his trial counsel testified at the motion for new trial hearing that she did not call the uncle to testify at the *Jackson-Denno* hearing because he told her that he gave the police permission to question Bowman.

8

Thus, as Bowman has not demonstrated a reasonable probability that the result of the trial would have been different if his trial counsel had presented additional evidence at his *Jackson-Denno* hearing, the trial court did not err in concluding that trial counsel's actions did not amount to ineffective assistance. See *Jones v. State*, 315 Ga. App. 427, 433 (3) (727 SE2d 216) (2012).

*Judgment affirmed. Miller and Ray, JJ., concur*.