**FIFTH DIVISION
MCFADDEN, P. J.,
RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 22, 2019**

# In the Court of Appeals of Georgia

A18A2037, A18A2038. U-HAUL COMPANY OF ARIZONA et al.   MA-074
      v. RUTLAND et al. and vice versa.   MA-075

MARKLE, Judge.

Charles Rutland was killed in a tragic auto accident involving a truck driven by Joshua Mayberry that was owned by U-Haul of Arizona ("UHAZ"), registered in Arizona, and rented from U-Haul of Georgia ("UHGA"). Margaret Rutland, as Charles's surviving spouse, filed suit against UHAZ and UHGA (collectively, "the U-Haul defendants"), along with Mayberry, Stephanie Crocker, who had rented the truck, and Sarah Wolf, the named driver on the rental agreement (collectively, "the individual defendants"). As is relevant to these appeals, in Count VI of the complaint, Rutland sought a declaratory judgment that UHAZ and UHGA did not qualify as self-insurers under OCGA §§ 33-34-2 (4) and 33-34-5.1, and thus the U-Haul defendants

could be liable for damages in excess of the minimum insurance coverage provisions.[1] See OCGA § 33-34-3. The U-Haul defendants moved to dismiss on the grounds that they were not required to register as a self-insurer and that there was no actual controversy that would authorize the trial court to issue a declaratory judgment. Thereafter, Mayberry moved for a stay of proceedings and a protective order, and Rutland moved the trial court to take judicial notice of the U-Haul defendants' recent filings with the Georgia Commissioner of Insurance.

The trial court (1) denied the U-Haul defendants' motions to dismiss the declaratory judgment count; (2) granted Rutland's motion for judgment on the pleadings; (3) granted defendant Mayberry's motion to stay the proceedings and for a protective order; and (4) granted in part Rutland's motion to take judicial notice of UHAZ's filing with the Georgia Insurance Commissioner. The trial court issued a certificate of immediate review, and this Court granted the U-Haul defendants' application for interlocutory review. These appeals followed.

After a thorough review of the record and the relevant statutory provisions, we conclude that the trial court erred in denying the U-Haul defendants' motion to

---

[1] Rutland also requested a declaratory judgment on whether Mayberry was a permissive user of the rental truck (Count IV of the complaint). The U-Haul defendants conceded this issue.

2

dismiss because the declaratory judgment action was improper. Accordingly, we reverse the trial court's order in Case No. A18A2037 and remand the case with instructions to dismiss the declaratory judgment count of the complaint. As to the cross-appeal in Case No. A18A2038, we conclude that the trial court abused its discretion by failing to review each of Mayberry's assertions of his Fifth Amendment right. Accordingly, we vacate the trial court's order granting the protective motion and remand the case for further proceedings. We also conclude that any allegation of error in staying the proceedings is moot because the stay has now lapsed. Finally, in light of our conclusion in Case No. A18A2037 that the declaratory judgment action against the U-Haul defendants was not properly before the trial court, Rutland's claim that the trial court should have taken judicial notice of all the documents the U-Haul defendants submitted to the Insurance Commissioner is also moot.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the

3

filing party's favor. In other words, a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Citations and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014). We review de novo a trial court's ruling on a motion to dismiss. *Walker Co. v. Tri-State Crematory*, 292 Ga. App. 411 (664 SE2d 788) (2008).

So viewed, the record shows that Crocker rented a U-Haul truck from UHGA on October 4, 2015. Crocker signed the rental agreement and paid cash for the truck for a two-day rental period. At no time did UHGA ask Crocker if she had or wished to purchase insurance, and neither Crocker nor Mayberry possessed any other automobile insurance. Mayberry drove the truck out of UHGA's lot.

Crocker and Mayberry did not return the truck at the end of the rental period on October 6. On October 8, Mayberry was driving the truck when he crossed the center line and struck Charles Rutland's vehicle head on, killing Charles. The police report alleged that Mayberry was under the influence of drugs or alcohol at the time

of the accident. Mayberry was arrested and indicted for homicide by vehicle, driving under the influence, and reckless driving, among other charges.

Margaret Rutland, Charles's widow, sued the U-Haul defendants, Crocker, Mayberry, and Wolf, for wrongful death, negligent entrustment, and punitive damages. She also sought a declaratory judgment to establish that UHAZ and UHGA did not qualify as self-insurers and thus there was no cap on their liability for damages. Along with the complaint, Rutland served her initial discovery requests on the U-Haul defendants and Mayberry.

The U-Haul defendants answered and moved to dismiss the complaint. Rutland opposed the motions and moved for judgment on the pleadings with respect to the declaratory judgment counts.

Mayberry remained incarcerated while the civil suit proceeded. In response to many of the various discovery requests, Mayberry invoked his Fifth Amendment right against self-incrimination. Mayberry and the U-Haul defendants also moved for a protective order under OCGA § 9-11-26 (c), and for a stay of discovery pending the outcome of Mayberry's criminal case.

Rutland opposed the motions for a stay and protective order and moved to compel discovery. She asserted that Mayberry had waived his right against self-

incrimination by speaking to investigators after the accident, and that opposing counsel deliberately withheld this information from her. Thus, Rutland filed a "motion for emergency relief," seeking in camera review or an evidentiary hearing to evaluate Mayberry's claims of privilege. She further requested sanctions under OCGA § 9-11-37 (d). Mayberry disputed that he had waived his Fifth Amendment rights, and he sought sanctions against Rutland under OCGA § 9-15-14 for unnecessarily expanding the litigation with the emergency motion.

Rutland also moved the trial court to take judicial notice of UHAZ's July 2016 filing of self-insurance with the Georgia Commissioner of Insurance. The U-Haul defendants subsequently amended their answer to disclose an insurance policy underwritten by Repwest Insurance Company, which the U-Haul defendants alleged was designed to cover the minimum limits of coverage.[2]

Following a hearing on the motions to dismiss, the trial court denied the U-Haul defendants' motions and granted Rutland's motion for judgment on the pleadings. Specifically, the trial court found that the U-Haul defendants were not self-insurers as that term is defined in OCGA § 33-34-2 (4) because they had not filed

---

[2] We note that the Repwest policy contained in the record is neither verified nor a certified copy and is largely illegible. Additionally, Repwest, a foreign insurer authorized to do business in Georgia, is not a party to the declaratory action.

their insurance plan with the Georgia Insurance Commissioner, and that they had failed to offer "spot" insurance at the time of rental. The trial court reviewed the Repwest policy, which the U-Haul defendants submitted to establish they possessed sufficient coverage, and concluded that it would not qualify as "spot" insurance. Thus, the trial court found that the U-Haul defendants had not limited their liability to the minimum coverage amount.

By separate order that same day, the trial court granted the motion for protective order and stayed the pending lawsuit as it pertained to Mayberry, and denied Rutland's motions for emergency relief and to compel discovery. The trial court concluded that Mayberry was entitled to assert his Fifth Amendment right against self-incrimination, and that he had not waived that right by speaking with investigators before the instant lawsuit had been filed. The trial court reserved any ruling on attorney fees.

As to Rutland's request that the trial court take judicial notice of UHAZ's 2016 filing with the Insurance Commissioner, the trial court granted the request to take judicial notice of the fact that UHAZ was listed and approved as a self-insurer. The trial court declined, however, to take judicial notice of the application and self-insurance plan UHAZ submitted to the Insurance Commissioner.

The trial court issued a certificate of immediate review, and this Court granted the U-Haul defendants' application for interlocutory review. These appeals followed.

1. The U-Haul defendants argue that, in denying their motion to dismiss and granting the declaratory judgment, the trial court misapplied the statutory provisions as to motor vehicle liability insurance. We agree that the trial court erred in denying the motion to dismiss, albeit on different grounds — we find that the declaratory judgment action against the U-Haul defendants was improper at this stage of the litigation.

The parties argued before the trial court as to whether Rutland could bring a declaratory judgment action directly against the U-Haul defendants when the underlying civil case against Mayberry and the individual defendants remained pending. The trial court resolved that issue in favor of Rutland, concluding that "Rutland is a third-party beneficiary of legislatively-mandated financial responsibility laws and so is authorized to seek declaratory relief to resolve this disagreement over the extent of the U-Haul Defendants' potential liability." We disagree.

Under the Declaratory Judgment Act ("the Act"), OCGA § 9-4-2,

(a) In cases of actual controversy, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to

8

declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

(b) In addition to the cases specified in subsection (a) of this Code section, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for the declaration, whether or not further relief is or could be prayed, in any civil case in which it appears to the court that the ends of justice require that the declaration should be made; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

Subsection (a) speaks of "cases of actual controversy." As we have explained, "[t]he existence of an actual controversy is fundamental to a decision on the merits by this court." (Citation omitted.) *Richards v. State Farm Mut. Ins. Co.*, 252 Ga. App. 45, 46 (555 SE2d 506) (2001).

The idea of an actual controversy is often described as standing to bring the suit. *Lebbos v. Davis*, 256 Ga. App. 1, 3 (2) (567 SE2d 345) (2002). "The constitutional and procedural concept of 'standing' falls under the broad rubric of 'jurisdiction' in the general sense, and in any event, a plaintiff with standing is a

9

prerequisite for the existence of subject matter jurisdiction."[3] *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008). As it relates to standing, we view the requirement that there be an actual case or controversy at the time the complaint is filed. *Perdue v. Lake*, 282 Ga. 348 (1) (647 SE2d 6) (2007). "Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated, and it is the person wishing to invoke a court's jurisdiction who must have standing." (Citation and punctuation omitted.) *Atlantic Specialty Ins. Co. v. Lewis*, 341 Ga. App. 838, 845 (1) (c) (802 SE2d 844) (2017). Here, Rutland sought a declaratory judgment that the U-Haul defendants would be liable for the full extent of any judgment received in the underlying wrongful death case. Thus, our focus is on Rutland's position and status with regard to the U-Haul defendants at the time the complaint was filed.

---

[3] We recognize that some cases from our Court have found the standing issue waivable. See, e.g., *I. A. Group LTD. Co. v. RMNANDCO, Inc.*, 346 Ga. App. 396 (816 SE2d 359) (2018). That case, however, addressed a standing issue not plead as an affirmative defense and not raised before the trial court. Id. at 399 (1). Here, in contrast, the parties heavily litigated the standing issue in the trial court. Thus, the issue was not waived. Indeed, we may even raise the issue sua sponte. *Center for A Sustainable Coast, Inc. v. Turner*, 324 Ga. App. 762, 763 n. 1 (751 SE2d 555) (2013). Thus, we find no merit to Rutland's claim that the U-Haul defendants have abandoned this issue.

10

"To establish a legal interest sufficient to maintain standing under the Declaratory Judgment Act, [Rutland] must show that [her] rights are in direct issue or jeopardy. [She] must show that the facts are complete and that the interest is not merely academic, hypothetical, or colorable, but actual." (Citation omitted.) *Bd. of Natural Resources v. Monroe County*, 252 Ga. App. 555, 557 (1) (556 SE2d 834) (2001). "It is well-established that a plaintiff lacks standing to seek declaratory relief when he or she has only a generalized economic interest that is contingent upon future events because such interests are not legally protectible interests." (Citation and punctuation omitted.) *Lewis*, 341 Ga. App. at 843-844 (1) (a).

Moreover, as we have explained, "[a]s a general rule, a plaintiff does not hav[e] standing to bring a direct action against a defendant's insurance company unless the plaintiff has obtained a judgment against the defendant that remains unsatisfied."[4] *Lewis*, 341 Ga. App. at 841 (1).

---

[4] Undeniably, the U-Haul defendants could have sought a declaratory judgment against Mayberry on this issue. See *St. Paul Fire & Marine Ins. Co. v. Johnson*, 216 Ga. 437, 438-439 (117 SE2d 459) (1960); see also *Ga. Cas. & Surety Co. v. Turner*, 86 Ga. App. 418 (71 SE2d 773) (1952) (permitting declaratory judgment action brought by insurers against insolvent insured). And they could have joined Rutland in that suit. *Johnson*, 216 Ga. at 439. But "the question whether a party is a necessary or proper party to an existing action is a separate question from whether the party has standing to bring his or her own action." *Lewis*, 341 Ga. App. at 844-845 (1) (c).

The rationale for this rule is that the plaintiff is not in privity of contract with either the defendant or the defendant's insurance company under the liability insurance policy and is not considered a third party beneficiary of the policy. It is only once a judgment has been obtained against the defendant insured that the plaintiff is no longer a stranger to the insurance policy but instead 'stands in the shoes' of the insured and can sue the defendant's insurer directly when the judgment is unsatisfied.

(Citations and punctuation omitted.) Id. Although there are some exceptions that would allow a plaintiff to sue an insurer directly, the only one potentially relevant here involves cases in which liability insurance is mandated by the legislature. Id. But that exception is inapplicable here because there is no dispute that the U-Haul defendants are responsible for covering that minimum amount. See *Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 614 (1) (440 SE2d 242) (1994) ("By mandating that all motor vehicle owners have at least [$25,000] in liability insurance coverage, the Legislature established the public policy that innocent persons who are injured in accidents involving motor vehicles should be able to recover at least [$25,000] of their damages.") (citations omitted). See also *Neese v. Cotton States Mut. Ins. Co.*, 254 Ga. 335, 341-342 (2) (329 SE2d 136) (1985) (exclusion in automobile insurance policy was void only to the extent of the minimum compulsory insurance required,

12

noting "compulsory insurance law does not establish public policy as to sums greater than those required by such law.").

When we apply this interpretation of standing under subsection (a) of the Act, it is clear that Rutland has not shown that she has standing to pursue a declaratory judgment.[5] See *Lewis*, 341 Ga. App. at 842 (1). What Rutland seeks is a declaratory judgment as to liability beyond that minimum amount. But Rutland has no direct relationship with the U-Haul defendants, and until she obtains a judgment in the underlying tort suit, she has only a hypothetical and generalized economic interest. In other words, Rutland's future *conduct* is not in jeopardy; only the extent of her potential recovery is uncertain. In fact, she has not shown that her interest is in jeopardy at all. *Bd. of Natural Resources*, 252 Ga. App. at 557 (1). Rather, she merely seeks to confirm hypothetically that the U-Haul defendants will be obligated to pay

---

[5] As we noted in *Lewis*, our courts have held that an injured party lacks standing to raise certain defenses or counterclaims in declaratory judgment actions brought by the insurance company because that party does not have a judgment against the insured and was not in privity with the insurer. See *Capitol Indem. Corp. v. Fraley*, 266 Ga. App. 561, 563 (1), (597 SE2d 601) (2004); *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 337-339 (6) (291 SE2d 410) (1982) (injured party lacked standing to assert counterclaims in declaratory judgment action brought by insurer). We explained that "[w]e discern no reason for creating a different rule of standing merely because, as in the present case, the plaintiff in the underlying tort action initiates the declaratory judgment action rather than asserts a counterclaim or defense in such an action." *Lewis*, 341 Ga. App. at 843 (1) (a).

13

the full amount of a judgment if and when she prevails in the underlying civil suit against the individual defendants. Thus, she has not shown that her interest is anything other than "merely academic, hypothetical, or colorable" as it remains dependent on the jury's verdict in the underlying wrongful death case. *Lewis*, 341 Ga. App. at 843 (1) (a). See also *Bankers Life & Cas. Co. v. Cravey*, 90 Ga. App. 113, 119-120 (82 SE2d 150) (1954) (declaratory relief cannot be predicated "on the happening of hypothetical future events") (citation and punctuation omitted).[6] Although the *U-Haul defendants* may face uncertainty as to future conduct, Rutland does not. As set forth above, we are required to view standing from the standpoint of the plaintiff at the time the complaint is filed. *Perdue*, 282 Ga. at 348 (1); *Lewis*, 341

---

[6] At least one court has reached the opposite conclusion and allowed a declaratory judgment to proceed where there were "at least the ripening seeds of such [a] controversy." See *Community Action of Greater Indianapolis v. Indiana Farmers Mut. Ins. Co.*, 708 NE2d 882, 884 (Ct. App. Ind. 1999). That case, however, involved a dispute between the insurer and the insured over an indemnification question and not an issue of the extent of the potential liability. Moreover, the other authorities cited by the appellate court in that case involved similar issues of indemnification or whether coverage existed at all, but did not ask the courts to express an opinion on the extent of the potential liability. We find these differences significant. Any standing a third-party like Rutland possesses would not "ripen" into an actual controversy until she obtains a judgment against Mayberry. See, e.g., *Cross v. Occidental Fire & Cas. Co.*, 347 F. Supp 342 (W.D. Ok. 1972) (plaintiff lacked standing to sue defendant driver's insurance for declaratory judgment where there was no underlying tort judgment against driver).

14

Ga. App. at 845 (1) (b). And at that relevant point in time, Rutland's faced no uncertainty as to her own future conduct.

> If we were to conclude otherwise and permit a plaintiff like [Rutland] to pursue an action for declaratory relief against the defendant's insurer while the underlying personal injury suit against the defendant remained pending, there is no reason why every tort claimant would not, upon filing a personal injury action, concomitantly file a declaratory judgment action to determine the maximum amount of coverage to which [s]he would be entitled in the event that liability was subsequently established. We cannot create the right to such premature litigation.

(Citation omitted.) *Lewis*, 341 Ga. App. at 842 (1).

We find our recent decision in *Lewis* on point and persuasive. In that case, a woman sued the City and the City's insurance company following an automobile accident that severely injured her daughter. 341 Ga. App. at 838-839. While the tort action was proceeding, the mother sought a declaratory judgment against the City and its insurer, confirming that the City had $5 million in insurance coverage. Id. at 838. The City acknowledged that it had waived its sovereign immunity up to $500,000, but argued that it did not waive immunity for the additional policy amount. Id. at 839. We held that the mother's suit against the City was improper under the Act because the mother lacked standing, and the issue was not ripe given that she had neither an

15

unsatisfied judgment against the City in the underlying tort action nor a contractual relationship with the insurer. Id. at 842 (1), 844 (1) (a). In holding that the mother lacked standing to sue the insurance company directly, we found that the exception for cases of legislatively mandated coverage did not apply. Id. at 842 (1). We noted that the City was statutorily required to carry insurance in the minimum amount of $500,000, but that it had discretion to obtain additional coverage, in that case up to $5 million. Id. at 840 n. 2.

The facts of our case are analogous. The U-Haul defendants concede they would owe the $25,000 minimum coverage, but they dispute that they could owe more. The minimum coverage is mandated by statute. See OCGA § 33-7-11 (a) (1). But whether U-Haul opted to obtain additional coverage was at its discretion. Applying the rationale of *Lewis*, the mandated minimum coverage does not open the door and give Rutland standing to bring suit directly against the U-Haul defendants. Like the mother in *Lewis*, Rutland lacks standing to bring this declaratory action directly. Moreover, as in *Lewis*, Rutland's claims are not ripe.

Therefore, given the relationship of the parties at this stage of the litigation, we must conclude that Rutland lacks standing to bring a declaratory judgment action directly against the U-Haul defendants under subsection (a) of the Act.

16

Our conclusion in this regard does not end the analysis, however, because subsection (b) of the Act "broadens the scope of the Declaratory Judgment Act beyond actual controversies to include 'justiciable controversies.'" (Citation omitted.) *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999); see also *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312 (66 SE2d 726) (1951). A "justiciable controversy" under this subsection means

> there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest. . . .

(Citation and punctuation omitted.) *Baker*, 271 Ga. at 214 (1). Although subsection (b) is broader in scope than subsection (a), the plaintiff must still face uncertainty as to a right she possesses. Id.

As our Supreme Court explained, "[w]here the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court will be issuing an advisory opinion, and the Declaratory Judgment Act makes no provision

17

for a judgment that would be 'advisory.'" (Citations and punctuation omitted.) *Baker*, 271 Ga. at 214 (1). Thus, subsection (b) would not authorize the trial court to decide the question before it in this case. Rutland is not in a position of uncertainty as to any right or future conduct on her part. The uncertainty she faces is merely in the form of the source of any financial award she might obtain from a jury in her pending tort case.[7] Essentially, she asks this Court to determine the extent of the U-Haul defendants' liability *if* Mayberry is found liable in the underlying lawsuit. Although the Act is to be liberally construed, OCGA § 9-4-1, such liberal construction does not permit the courts to venture into issuing advisory opinions. *Baker*, 271 Ga. at 214 (1). See also *Brende v. Brende*, 330 Ga. App. 556, 557-558 (3) (768 SE2d 531) (2015)

---

[7] In *State Farm Mut. Automobile Ins. Co. v. Mabry*, the Supreme Court of Georgia held that subsection (b) permitted a declaratory judgment to consider an issue that was unsettled, of manifest importance to the parties, and which involved a pure question of law for the court to decide. 274 Ga. 498, 500-501 (3) (556 SE2d 114) (2001). At first blush, this holding seems to indicate that the present action might be permissible. But *Mabry* is readily distinguishable as it involves a first party insurance dispute between insureds and their insurer to determine whether the policies covered the losses sustained. Id. at 498. The parties were in privity, the policy holders clearly had established rights under the policy, and the declaratory judgment was necessary to determine what exactly those rights entailed. Id. In contrast, in the instant case, the parties are not in privity, the plaintiff has no accrued rights with respect to the U-Haul defendants, and no right will attach – if at all – until there is a favorable jury verdict in the underlying civil case. Thus, any claim for declaratory relief is speculative at best, and any opinion of this Court would be advisory. We therefore find that *Mabry* does not dictate that the trial court had authority to decide the case.

(trial court was not authorized to issue ruling based on future contingency and, as an advisory opinion, trial court's order was due to be vacated) (physical precedent only).

The directive from our Supreme Court is clear: "Declaratory judgment will not be rendered based on a possible or probable future contingency. Entry of a declaratory judgment under such circumstances is an erroneous advisory opinion which rules in a party's favor as to future litigation over the subject matter and must be vacated." *Baker*, 271 Ga. at 214 (1). See also *City of Suwanee v. Settles Bridge Farm, LLC*, 292 Ga. 434, 437 (738 SE2d 597) (2013) ("Before reviewing the merits of the case, we must first address the issue of ripeness, because if this case is unripe for judicial review, this Court is not authorized to decide it.").

Rutland essentially asks this Court to give an advisory opinion stating the possible extent of the U-Haul defendants' liability if the driver is deemed liable following the civil trial. This we cannot do. Accordingly, we conclude that the trial court erred in denying the U-Haul defendants' motion to dismiss. We therefore reverse the trial court's order and remand the case with instructions to dismiss the remaining declaratory judgment count of Rutland's complaint.

*Case No. A18A2038*

2. In Case No. A18A2038, Rutland appeals the trial court's orders granting Mayberry's and the U-Haul defendants' motions for a protective order, staying the proceedings pending the outcome of Mayberry's criminal case, and restricting its judicial notice of documents UHAZ submitted in its application to Georgia's Commissioner of Insurance. We discern no error.

(a) Protective order

Rutland contends that the trial court abused its discretion by allowing Mayberry to invoke a blanket Fifth Amendment privilege to all discovery requests because Mayberry waived the privilege when he gave a statement to insurance company investigators. She further contends that the trial court's order cannot stand because the court failed to consider the totality of the circumstances in granting the protective order and failed to exercise its discretion. Finally, she argues that, at a minimum, she should have been granted an evidentiary hearing or an in camera review of the documents and statements to assess the extent of the privilege.

We review a trial court's ruling on discovery matters for abuse of discretion. *Dempsey v. Kaminski Jewelry, Inc.*, 278 Ga. App. 814, 815 (630 SE2d 77) (2006).

The Fifth Amendment of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. The Georgia

20

Constitution contains a similar privilege against self-incrimination, providing that no person shall be compelled to give testimony tending in any manner to be self-incriminating. Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. See also OCGA § 24-5-505 (a) ("No party or witness shall be required to testify as to any matter which may incriminate or tend to incriminate [himself] or which shall tend to bring infamy, disgrace, or public contempt upon [himself] or any member of [his] family."). The privilege protects a party from "the cruel trilemma of self-accusation, perjury or contempt." (Citation omitted.) *Michigan v. Tucker*, 417 U. S. 433, 445 (III) (94 SCt 2357, 41 LE2d 182) (1974).

This privilege against self-incrimination extends not only to those answers that would support a conviction, but also to answers creating a "real and appreciable" danger of establishing a link in the chain of evidence needed to prosecute. *Axson v. Nat. Surety Corp.*, 254 Ga. 248, 250 (327 SE2d 732) (1985); see also *Dempsey*, 278 Ga. App. at 815 (1) (a). Where a party chooses to invoke the privilege in a civil proceeding, the result is that the factfinder may infer that the documents would have been harmful. See *In the Matter of Henley*, 271 Ga. 21, 22 (2) (518 SE2d 418) (1999) (noting that an "adverse inference . . . could have been drawn had [defendant] refused production based upon his privilege against self-incrimination").

Nevertheless, as we have explained, "[t]here is no blanket Fifth Amendment right to refuse to answer questions in civil proceedings, however. The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim." (Citation and punctuation omitted.) *Dempsey*, 278 Ga. App. at 815 (1) (a).

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.

(Citation omitted.) Id. at 816 (1) (a). Thus, a party cannot assert a sweeping privilege to all questions; "[o]nly when the privilege is asserted in response to a specific question could a trial court hold that the claim of privilege is justified." (Citations omitted.) Id. at 816 (1) (a) (i).

Moreover, the privilege does not apply to all forms of discovery. For example, producing a document may fall outside the privilege. See *Dempsey*, 278 Ga. App. at 817 (1) (a) (ii) ("The act of producing a document, financial or otherwise, does not in itself automatically create evidence by means of a testamentary act in the way that

22

. . . responding to a pre-trial interrogatory . . . does. Instead . . . the act may merely allow access to evidence already in existence.").

Here, Mayberry invoked the privilege in relation to specific discovery requests. For example, Mayberry invoked the privilege in response to interrogatories asking him to describe how the accident occurred; if he had consumed any alcoholic beverages or controlled substances prior to the accident; and if he had been given any tests to detect drugs or alcohol following the accident. He also invoked the privilege when asked to produce copies of expert reports concerning the accident; any statements he made regarding the accident; and the statements of any eyewitnesses. In granting the protective order, the trial court explained,

> the allegations contained in the Complaint . . . and the discovery requests propounded upon Defendant Mayberry . . . implicate his rights against self-incrimination under the 5th Amendment of the U. S. Constitution, as there is a substantial overlap between the allegations contained in the Plaintiff's Complaint, along with the discovery requests, and the pending criminal indictment . . . .

The trial court's order, however, does not show that it undertook a review to ascertain whether the privilege was appropriate for each response in which it was

invoked. As our Supreme Court explained, "[i]n making the determination, the trial court should consider the implications of each question to which the privilege is raised and the setting in which it is asked." *Axson*, 254 Ga. at 249.

Moreover, the trial court did not evaluate the privilege with respect to requests to produce, and we have explained that the privilege can, but does not *automatically*, apply to the act of producing a document. *Dempsey*, 278 Ga. App. 817 (1) (a) (ii) n. 3 (Bernes, J., dissenting). Here, the trial court's order is simply too cursory to enable us to review whether it properly exercised its discretion. Accordingly, we must vacate the trial court's order granting the protective order and remand the case for further proceedings with respect to whether Mayberry can invoke his Fifth Amendment right as to each request. See *Begner v. State Ethics Comm.*, 250 Ga. App. 327, 332 (1) (552 SE2d 431) (2001).

Rutland also contends that Mayberry waived the privilege when he made statements to insurance investigators after the accident. "[A] person who waives his privilege of silence in a civil case risks that testimony in the civil case will be admissible in the criminal case." *Austin v. Nagareddy*, 344 Ga. App. 636, 640 (1) (811 SE2d 68) (2018). The trial court found that there was no waiver because the statements "did not occur in the same trial or proceeding where the privilege is

24

claimed." We agree. See *Mallin v. Mallin*, 227 Ga. 833, 836 (3) (183 SE2d 377) (1971) (waiver of privilege in first trial did not preclude defendant from invoking privilege in subsequent trial); see also *In re Saunders*, 528 BR 860, 868 (2) (Bankr. N.D. Ga. 2015) (waiver applied to statement made under oath in same judicial proceeding). Moreover, waiver of this constitutional right "is not lightly to be inferred" and must be knowingly and voluntarily obtained.[8] *Emspak v. United States*, 349 U. S. 190, 196 (I) (75 SCt 687, 99 LE2d 997) (1955). Accordingly, we conclude that the trial court properly determined that Mayberry had not waived the privilege.

Finally, Rutland seeks to circumvent the protective order, at least as it pertains to the U-Haul defendants, by claiming that there is a "substantial need" exception to the work product privilege. In light of our conclusion in Division 1 that the

---

[8] Rutland cites *Bowman v. State*, 324 Ga. App. 734 (751 SE2d 532) (2013), for the proposition that there are certain factors the trial court must consider when determining whether a defendant waived a constitutional right. But that case involved a confession by a juvenile, which we explained must be viewed with "greater caution than those of adults." Id. at 735-736 (1). We have found no Georgia case that has applied these factors to a Fifth Amendment waiver in other contexts, and we are reluctant to conclude that the same factors come into play in viewing a waiver by an adult.

25

declaratory judgment action against the U-Haul defendants was not properly before the trial court, we need not address this alleged error.[9]

(b) Stay of proceedings[10]

Rutland argues that the trial court erred in staying the entire proceeding pending the outcome of Mayberry's criminal trial. The U-Haul defendants contend that this issue is moot because the trial court's order issued the stay for 120 days and that time frame has passed.

We review a trial court's decision to grant a motion to stay for abuse of discretion. *Austin*, 344 Ga. App. at 638 (1).

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How

---

[9] We note, however, that "[Mayberry's] privilege against self-incrimination does not prevent [Rutland] from seeking the documents from appropriate third parties." *Dempsey*, 278 Ga. App. at 822 (1) (a) (ii) n. 5 (Bernes, J., dissenting).

[10] Rutland also devotes a portion of her brief in this cross-appeal to challenge sanctions under OCGA § 9-15-14. The record shows, however, that the trial court reserved ruling on this issue, and thus there is nothing for this Court to review. *Homelife on Glynco v. Gateway Center Commercial Assn.*, __ Ga. App. __ (6) (819 SE2d 723, 731 (6) ) (2018) ("Where there is no final ruling upon an issue by the trial court, there is nothing for the appellate court to pass upon, for this court is a court for the correction of errors made in the trial court.") (citation omitted).

26

this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

(Citations and punctuation omitted.) *Bloomfield v. Liggett & Myers*, 230 Ga. 484, 485 (198 SE2d 144) (1973). As we recently explained, "whether to stay a civil action pending resolution of a parallel criminal prosecution is not a matter of constitutional right, but, rather, one of court discretion, that should be exercised when the interests of justice so require." (Citations omitted.) *Austin*, 344 Ga. App. at 638-639 (1).

In *Austin*, we noted that various federal courts have considered a series of factors to determine whether a stay was proper. 344 Ga. App. at 639 (1). Although we did not expressly adopt those balancing tests, we noted that the trial court should consider whether the action "should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court. . . ." (Citation omitted.) Id. at 640 (1).

Here, the trial court stayed the proceedings for 120 days in its order dated January 31, 2018. As that period of time passed before this case was docketed in this Court, we conclude that the issue is moot. See *Cook v. Harris*, 209 Ga. 425 (73 SE2d 89) (1952) (when business license that was subject of injunction expired by its own terms, injunction was moot); *Weeks v. Weeks*, 324 Ga. App. 785, 789 (4), n. 4 (751

27

SE2d 575) (2013) ("A case is moot when its resolution would amount to the determination of an abstract question not arising upon *existing* facts or rights." (citation and punctuation omitted).

(c) Judicial notice

Finally, Rutland argues that the trial court erred in limiting the documents of which it would take judicial notice because the U-Haul defendants' application to the Commissioner of Insurance was filed under oath and as part of the regulatory process. In light of our conclusion in Division 1 that the trial court erred in allowing the declaratory action to proceed, and our reversal of the trial court's denial of the U-Haul defendants' motion to dismiss, the issue of judicial notice is moot.

In summary, we reverse the trial court's order denying the U-Haul defendants' motion to dismiss, and we remand the case with instructions to dismiss the complaint against the U-Haul defendants. We vacate the trial court's protective order, and remand the case with instructions to reconsider Mayberry's invocation of his Fifth Amendment privilege as it pertains to each individual discovery request. Finally, we dismiss the appeal with regard to the order granting the stay and granting in part the request to take judicial notice.

*Judgment reversed, and case remanded with direction in Case No. A18A2037; judgment vacated in part and dismissed in part in Case No. A18A2038. Rickman, J., concurs. McFadden, P. J., concurs fully and specially.*

A18A2037, A18A2038. U-HAUL COMPANY OF ARIZONA et al.

v. RUTLAND et al.; and vice versa.


MCFADDEN, Presiding Judge, concurring fully and specially.

I am persuaded by the majority's thoughtful opinion and so concur fully. But I write separately to express my discomfort at deciding this case on an issue not addressed in the appellate briefs. Should the appellees choose to file a motion for reconsideration on that issue, I look forward to seeing their argument and any response by the appellants.